## Case No. 2,121.

### BULLARD v. BELL.

[1 Mason, 243.] [1]

Circuit Court, D. New Hampshire. Oct. Term, 1817.

DEBT—ACTION BY HOLDER OF DISHONORED BANK NOTE — BANKS — LIABILITY OF STOCKHOLDER—LIMITATIONS.

1. Debt lies in favor of a holder of a dishonored bank note, against a stockholder in the bank, to recover the amount of the note, under the provisions of the bank charter, making the stockholders personally liable for such note in such a case.

2. Semble, that debt lies in all cases, where a sum certain is due to the party, although it arise from a collateral undertaking.

[Cited in U. S. v. Lyman, Case No. 15,647.]
[See note at end of case.]

3. Upon a bank note, payable to W. Pitt, or bearer, the circuit court has jurisdiction to enforce payment, in favor of a holder who is a citizen of another state, although it is not shown, that W. Pitt is a fictitious person, or a citizen of another state; the prohibition of the act of the 24th September, 1789, c. 20, § 11 [1 Stat. 78], not applying to such a note. A bank note payable to W. Pitt, or bearer, is in effect payable to the bearer; and, as between any bona fide holder and the bank, such holder is to be deemed the bearer, to whom the bank is originally liable. A fortiori, the holder may maintain a suit against a stockholder upon default of payment of such note under such statutable provision. The statute of limitations of New Hampshire (which is, in this respect, a transcript of the statute 21 Jac. I. c. 16) does not apply as a bar to an action of debt upon such statutable provision, for it is not founded upon any contract or lending without specialty.

[Cited in Halsted v. Lyon, Case No. 5,968; U. S. v. Platt, Id. 16,054a; Towne v. Smith, Id. 14,115; Brown v. Noyes, Id. 2,023; Phillips v. Preston, 5 How. (46 U. S.) 291; Clarke v. Janesville, Case No. 2,854; Hill v. Winne, Id. 6,503; Noell v. Mitchell, Id. 10,287; Bushnell v. Kennedy, 9 Wall. (76 U. S.) 391; Cooper v. Thompson, Case No. 3,202; Halsey v. Township of New Providence, 3 Fed. 367; Thompson v. Perrine, 106 U. S. 592, 1 Sup. Ct. 567, 568; Andrews v. Bacon, 38 Fed. 778; Jones v. Shapera, 6 C. C. A. 423, 57 Fed. 462. Applied in Barling v. Bank of British North America, 1 C. C. A. 510, 50 Fed. 262.]
[See Wood v. Dummer, Case No. 17,944; Bank of Kentucky v. Wister, 2 Pet. (27 U. S.) 318; Noell v. Mitchell, Case No. 10,287; Varner v. West, Id. 16,885.]

At law. Debt on a liability created by statute. The declaration contained a variety of counts, founded on different bank notes; but the material counts were as follows:

1st Count. For that by a certain statute of the state of New Hampshire, passed on the 18th day of June, 1806, which statute now remains in full force, a certain corporation or banking company was established, by the name of the "President, Directors, and Company of the Hillsborough Bank." And in the said statute, it is among other things enacted, that all bills issued from the bank aforesaid, and signed by the president, shall be binding on said corporation. And in the said statute it is among other things also enacted, that if said corporation shall, at any time thereafter, divide their stock, previous to the payment of all their bills, or shall refuse or neglect to pay any of their bills when presented for payment in the usual manner, the original stockholders, their successors, assigns, and the members of said corporation, shall, in their private capacities, be jointly and severally liable to the holder of any bill or bills, issued by the said corporation, for the payment thereof, as by the record of the said act, a copy whereof, duly authenticated, is here in court to be produced, at large appears. And the said Samuel Bell, on the 17th day of October, 1806, was, for a long time before had been, and ever since hath been, and now is, an original stockholder in the said bank, and a member of the said corporation, and subject to the liabilities by the said statute created, to wit, at Chester aforesaid. And afterwards at Amherst, aforesaid, to wit, on the day and year last abovementioned, the president, directors, and company, for a good and valuable consideration then and there by them received, made, issued, and passed their certain bill or note, commonly called a bank-bill, of that date, signed by Samuel Bell, as president, and countersigned by D. Holmes, as cashier of said corporation, for and in behalf of said corporation; and in and by the said bill, the president, directors, and company aforesaid, promised one W. Pitt, to pay him, or bearer, the sum of ten dollars on demand. And afterwards, to wit, on the 23d day of September, 1809, the said bill came into the hands and possession of the said Silas Bullard, for a good and valuable consideration, by him then and there paid. And thereafter, to wit, on the day and year last mentioned, at Amherst aforesaid, the said Bullard, being the lawful holder and bearer of the said bill, and exclusively entitled to receive the money due thereon, presented the same, then unpaid, at the bank, or office of discount and deposit of said corporation, in the usual manner, for payment; and then, and there, as holder or bearer of said bill, as aforesaid, demanded of the said president, directors, and company, payment of the same; whereby they became liable to pay the same bill to the said Silas Bullard according to the tenor thereof; but the said president, directors, and company, well knowing all the premises, then and there refused to pay the same, and have never since paid the same or any part thereof, whereby, and by force of the statute aforesaid an action accrued to the said Bullard, to recover and receive of the said Samuel Bell, in his private capacity, the amount of said bill and his damages by reason of the detention thereof. And afterwards, on the 18th day of October, in the year last mentioned, at said Amherst, the said Silas Bullard requested the said Samuel Bell to pay the same bill, and the interest thereon; but the said Samuel Bell, then and there refused to

---

[1] [Reported by William P. Mason, Esq.]

pay the same, and hath never paid the same, or any part thereof; but wilfully and injuriously neglects so to do, contrary to the form of said statute in such case provided, and the laws of the said United States.

2nd Count. For that by a certain statute of the state of New Hampshire, passed on the 18th day of June, 1806, which statute now remains in full force, a certain corporation or banking company was established, by the name of the "President, Directors, and Company of the Hillsborough Bank." And in the said statute it is among other things enacted, that all bills issued from the bank aforesaid, and signed by the president, shall be binding on said corporation. And in the said statute, it is among other things also enacted, that if said corporation shall at any time thereafter divide their stock, previous to the payment of all their bills; or shall refuse or neglect to pay any of their bills, when presented for payment in the usual manner; the original stockholders, their successors, assigns, and the members of said corporation, shall, in their private capacities, be jointly and severally liable to the holder of any bill or bills issued by the said corporation, for the payment thereof; as by the record of the said act, a copy whereof, duly authenticated, is here in court to be produced, at large appears. And the said Samuel Bell, on the 17th day of October, 1806, was, for a long time before had been, and ever since hath been, and now is, an original stockholder in the said bank, and a member of the said corporation, and subject to the liabilities by the said statute created, to wit, at Chester aforesaid. And afterwards at Amherst aforesaid, to wit, on the day and year last above-mentioned, the said president, directors, and company, for a good and valuable consideration, then and there by them received, made, issued and passed their certain bill or note, commonly called a bank bill, of that date, signed by Samuel Bell, as president, and countersigned by D. Holmes, as cashier of said corporation, for and in behalf of said corporation; and in and by said bill, the president, directors, and company aforesaid, promised one W. Pitt to pay him, or bearer, the sum of ten dollars on demand. And afterwards, to wit, on the 23d day of September, 1809, the said bill came into the hands and possession of the said Silas Bullard, for a good and valuable consideration by him then and there paid. And thereafter, to wit, on the day and year last mentioned, at Amherst aforesaid, the said Bullard, being the lawful holder and bearer of the said bill, and exclusively entitled to receive the money due thereon; and the same bill being then and there wholly unpaid; the said corporation divided their stock and funds among the several members of said corporation, they well knowing that outstanding bills and notes to a large amount were unpaid, particularly the bill aforesaid, and intending to injure and defraud the said Bullard in his just rights, and

claim aforesaid upon said corporation; whereby, and by force of the statute aforesaid, an action hath accrued to the said Bullard, to have and recover of the said Bell, in his private capacity, the amount of the said bill in this count mentioned, and his damages to be adjudged to him by reason of the detention of the same. Yet the said Samuel Bell, though requested to pay the same, to wit, at Amherst aforesaid, on the day and year last above-mentioned, and on divers other days there, hath never paid the same, but neglects and refuses so to do, contrary to the form of the statute aforesaid, in such case made and provided, and the laws of the said United States.

3d Count. For that by a certain statute of the state of New Hampshire, passed on the 18th day of June, 1806, which statute now remains in full force, a certain corporation or banking company was established by the name of the "President, Directors, and Company of the Hillsborough Bank." And in the said statute it is among other things enacted, that all bills issued from the bank aforesaid, and signed by the president, shall be binding on said corporation. And in the said statute it is among other things also enacted, that if said corporation shall at any time thereafter divide their stock, previous to the payment of all their bills; or shall refuse or neglect to pay any of their bills, when presented for payment in the usual manner, the original stockholders, their successors, assigns, and the members of said corporation, shall in their private capacities be jointly and severally liable to the holder of any such bill or bills, issued by the said corporation for the payment thereof, as by the record of the said act, a copy whereof, duly authenticated, is here in court to be produced, at large appears. And the said Samuel Bell, on the 17th day of October, 1806, was, for a long time before had been, and ever since hath been, and now is, an original stockholder in the said bank, and a member of the said corporation, and subject to the liabilities of the said statute created, to wit, at Chester aforesaid. And afterwards, at Amherst aforesaid, to wit, on the day and year last above-mentioned, the said president, directors, and company, for a good and valuable consideration, then and there by them received, made, issued, and passed their certain bill or note, commonly called a bank bill, of that date, signed by Samuel Bell, as president, and countersigned by D. Holmes, as cashier of said corporation; and in, and by said bill, the president, directors, and company aforesaid, promised one W. Pitt to pay him, or bearer, the sum of ten dollars on demand. And afterwards, to wit, on the 23d day of September, 1809, the said bill came into the hands and possession of the said Silas Bullard, for a good and valuable consideration, by him then and there paid. And thereafter, to wit, on the day and year last mentioned, at Amherst aforesaid, the said Bullard, being

the lawful holder and bearer of the said bill, and exclusively entitled to receive the money due thereon, presented the same then unpaid, at the bank, or office of discount and deposit of said corporation, in the usual manner, for payment, and then and there, as holder or bearer of said bill as aforesaid, demanded of the president, directors, and company payment of the same, whereby the said president, directors, and company became liable, and then and there refused to pay the same to the said Silas Bullard. And afterwards, to wit, on the 12th day of August, 1811, the said Silas Bullard, having brought his action upon the said note or bill, recovered judgment thereon, before Seth Wheeler, Esq., one of the justices of the peace within and for the county of Hillsborough, in said state of New Hampshire, duly commissioned and authorized there, to take cognizance of said action, for the sum of eleven dollars and nine cents damage, and ten dollars and fifty cents, costs of suit, as by the record of said judgment, a copy of which, duly authenticated, is here in court to be produced, fully appears; which judgment is now in full force and not annulled, reversed, satisfied, or appealed from, of all which the said Samuel Bell had due notice; whereby, and by force of the statute aforesaid, an action hath accrued to the said Bullard, to have and recover of the said Samuel Bell, in his private capacity, the said several sums, amounting to the sum of twenty-one dollars and fifty-nine cents, and his damages, by reason of the detention of his said debt, to be adjudged to him. Yet, though requested to pay the same judgment or bill, the said Samuel Bell refuses and neglects to pay the same, contrary to the form of the statute aforesaid, in such case provided, and the laws of the United States.

At the last May term of the court, a motion was made by Mason and Smith for the defendant, to dismiss the suit, for want of jurisdiction; and they contended, that the case fell within the exception as to promissory notes and choses in action, in the 11th section of the judicial act of 24th of September, 1789, c. 20. They argued in substance as follows. The courts of the United States, having only a limited jurisdiction, the rules applicable to inferior courts as to jurisdiction, have been applied to them. The plaintiff must state all that is necessary to give jurisdiction. This is an action by an assignee to recover the contents of a promissory note. The judgment and satisfaction would be payment of the note, and the bank would thereby be discharged. The declaration describes a note payable to W. Pitt or bearer, and states, that the bank on a certain day (17th of October, 1806,) for a valuable consideration, made, issued, and passed the same note; and that afterwards, to wit, on the 23d of September, 1809, the same note came into the possession of the plaintiff, for a valuable consideration by him then and there paid. It is necessarily to be inferred from the declaration, that the bank delivered the note to some person other than the plaintiff; and it does not appear, that such person could maintain an action in this court. Perhaps the plaintiff might have declared otherwise, and stated enough to have maintained the jurisdiction. The plaintiff is an assignee within the meaning of the statute. A note payable to A B, or bearer, is assignable by delivery. The delivery of such notes is an assignment, as much as an endorsement is of notes payable to order. Kyd, Bills, 40; Chit. Bills, 115. In a declaration on a note payable to bearer, the averment is, "A B assigned over and delivered the note to the plaintiff." Id. 245. If in case of notes and bills payable to bearer, it is held, that no averment concerning the original party is necessary, all such notes and bills may be sued in the courts of the United States, which was not the intention of the statute; and they farther cited Montalet v. Murray, 4 Cranch [8 U. S.] 46; Sere v. Pitot, 6 Cranch [10 U. S.] 332.

Pitman and D. Davis, for plaintiff.

The suit is within the jurisdiction of the court. The parties are citizens of different states; and if the case be within the exception of the 11th section of the statute, it is for the defendant to make it out by plea. But this case is not within the exception. The bank notes were in effect payable to bearer; and it is not averred in the declaration, that they were even passed to "W. Pitt." In point of fact we all know it is otherwise; and the name in the notes is merely formal. All bank notes are made payable to some person or bearer, but it never was supposed, that any such person had an interest in the bill. But the present action is not founded on the bank note; that is merely inducement to the action. The plaintiff had no right of action against the defendant, until after a demand made by him at the bank, and a refusal of payment. The liability of the defendant to pay the plaintiff is an original liability created by statute, and not by an assignment. The plaintiff is not suing as assignee of the note. A bank note is very different from a common promissory note. It passes by delivery, and is considered as cash. There can be but two original parties to a bank note, the bank itself and the bearer. "W. Pitt" is a mere fictitious party, and had no right to assign the note.

Before STORY, Circuit Justice, and SHERBURNE, District Judge.

STORY, Circuit Justice. The language of the 11th section of the judicial act (Sept. 24, 1789, c. 20) is: "Nor shall any district or circuit court have cognizance of any suit to recover the contents of any promissory note, or other chose in action, in favor of an assignee, unless a suit might have been prose-

cuted in such court to recover the said contents, if no assignment had been made; except in cases of foreign bills of exchange." Assuming that congress have authority under the constitution to create such an exception in suits between citizens of different states, upon which, if the question were new, I should entertain great doubt, though authorities have certainly gone a great way to recognize it,—[Montalet v. Murray] 4 Cranch [8 U. S.] 46; [Sere v. Pitot] 6 Cranch [10 U. S.] 332,—yet to bring the case within the exception, the action must not only be founded on a chose in action, but it must be assignable; and the plaintiff must sue in virtue of an assignment. A note payable to bearer, is often said to be assignable by delivery; but in correct language there is no assignment in the case. It passes by mere delivery; and the holder never makes any title by or through any assignment, but claims merely as bearer. The note is an original promise by the maker to pay any person, who shall become the bearer. It is, therefore, payable to any and every person, who successively holds the note bona fide, not by virtue of any assignment of the promise, but by an original and direct promise, moving from the maker to the bearer. See Gibson v. Minet (Lord C. B. Eyre's opinion) 1 H. Bl. 606; Grant v. Vaughan, 3 Burrows, 1516. The case is still stronger in relation to bank notes; for in the common transactions of life they pass by delivery as cash. When made payable, as in the present case, to "W. Pitt or bearer," nobody supposes that they are payable to a real person, who thereby acquires an interest in them. It is notorious, that such names are fictitious; and the whole objects of the banks would be defeated, if the holder could not entitle himself to recover upon them, without showing an assignment, or delivery, from the fictitious person. They pass out of, and into, the bank a thousand times; and are always understood to be payable to the bearer, whoever for the time being he may be, and to no one else. And even if "W. Pitt" were a real person in this case, it would not change the nature of the suit; for the note would still be payable to the bearer, although he never claimed by or through "W. Pitt;" since it is payable in the alternative, and not to "W. Pitt" absolutely. Even a payment to "W. Pitt" would be no discharge of it as against a subsequent bearer, bona fide, for a valuable consideration; for bank notes payable to bearer, are always deemed good, while they remain in circulation, notwithstanding they have been presented to the bank and paid by the bank. In my judgment it is perfectly clear, that the words of the statute were never meant to apply to notes payable to bearer. In such a case it is impossible for any court to say, to whom in particular the notes are originally payable; for no person in rerum natura is specified; and they are just as much directly

payable to the last, as to the first person, who answers the description of bearer. The statute is intended to apply only to promises made to persons in esse, having a certain and fixed character of citizenship, or alienage; and who might technically make an assignment, and sue and be sued.

But the present action is not founded on any assignment. It is an original action created by the statute between the present parties, and never had any existence between any other parties. The debt, which the plaintiff claims from the defendant, is a sum, which the latter never owed to any other person. It is a chose in action, originally vested under the statute in the present plaintiff, and which has never been assigned. To be sure, a title to the bank notes stated in the declaration forms an ingredient in his case; but it is not all of his case. It is but matter of inducement to his action. How then is it possible for the court to say, that it has not jurisdiction of this case, when the parties are citizens of different states, and there never has been an assignment of the present cause of action, and the original parties in whom it first vested are before the court? Neither the district judge nor myself have the slightest hesitation in overruling the motion.

The defendant then pleaded, 1st. The general issue nil debet. 2dly. The statute of limitations. To the latter plea there was a general demurrer and joinder.

Pitman, for plaintiff, in support of the demurrer. 1st. The statute of limitations applies only to actions of debt, grounded upon any lending or contract without specialty. This action, we say, is not grounded upon any lending or contract, and so is not within the statute; or it is grounded upon a lending or contract, but not without specialty, being grounded upon a statute, which is a specialty. Jones v. Pope, 1 Saund. 34; Hodsden v. Harridge, 2 Saund. 66; Warren v. Consett, 2 Ld. Raym. 1502; Com. Dig. tit. "Temps," G 15. It seems, however, to be admitted, that if the action of debt lies, this case is not within the statute. 1st, debt lies, unless it be on account of the thing demanded; or, 2dly, unless it be from the nature of the ground and cause of action.

1st. As to the nature of the thing demanded. This is a sum of money certain in itself, or which may be rendered certain by an averment. 1 Chit. Pl. 101, 113. In page 113, Chitty says: "Though debt is sustainable upon a simple contract, a specialty, a record, or a statute, yet it lies only for the recovery of a sum of money in numero, and not where the damages are unliquidated, and incapable of being reduced by averment to a certainty." There is nothing, therefore, in the nature of the thing demanded which renders debt in this case improper, but, on the contrary, the nature of the thing demanded

points this out as the proper form of action, unless there is something in the nature of the ground and cause of action which forbids it.

2dly. As to the ground or cause of action. The action of debt is a proper remedy, where a determinate sum of money is due from one man to another. 2 Bl. Comm. 465; 3 Bl. Comm. 154. Anciently it was held, that the plaintiff could not recover less than he demanded, and this, together with the right of the defendant to wage his law, was the reason why the action of assumpsit was resorted to in preference. To support the action of assumpsit a promise was alleged, of which the debt was made the consideration, and damages were sought, for the non-performance of the promise, which damages might be less than the sum stated in the declaration. But as now a plaintiff in an action of debt can recover according to the sum due, though less than the sum demanded, and wager of law has become obsolete, there seems to be no reason, why the action of debt should not as well lie, as the action of assumpsit, in cases when a debt is due, which is made the foundation or consideration of the assumpsit. The same debt which will support an assumpsit, will also support an action without the fiction of an assumpsit. If in the present case there is such a debt due from the plaintiff to the defendant, as will be a consideration for an assumpsit, so that by this fiction the action of assumpsit can be brought, the same debt is sufficient to support the action of debt. It has been said, that case is the proper action; and the counsel for the defendant differ as to the proper form of action, whether case or assumpsit. The action of case, as contradistinguished to the action of assumpsit, is to recover damages for torts. In case, in the latter sense, the sum of money demanded in damages is neither certain in itself, nor capable of being reduced to a certainty by an averment, nor by any thing short of the verdict of the jury. In cases of torts, therefore, it is most manifest, that debt cannot lie for this reason, if for no other; and it would seem to be equally clear, that in cases where a sum of money was due, which was certain in itself, or capable of being reduced to a certainty by an averment, that debt or assumpsit, and not case, was the proper remedy. The question then seems to be reduced to this, whether assumpsit, in the case at bar, is the proper action, to the exclusion of the action of debt. I say, to the exclusion of the action of debt; for there is no doubt, but that in some cases, either action will lie, at the option of the plaintiff. It seems then necessary to ascertain, what are the properties which are common to both actions, and what belong exclusively to each. To support the action of debt, it is necessary that there should be a determinate sum of money due from one person to another. This sum must be determinate in itself, or capable of being determined by an averment. 1 Chit. Pl. 101, 113.

This debt may be created by the act of the parties, or by the act of law. It is created by the act of the parties, in cases of contract; and by the act of law, when founded on the provisions of statutes. The action of assumpsit is founded upon a promise express or implied. In assumpsit the action rests entirely upon the promise. In debt it is founded entirely upon a sum of money due. It is apparent, that there may be cases, where there is an express promise, which will support an action of debt; as by the payee against the maker of a promissory note for a determinate sum. There are also cases, where there is no express promise, but there being a determinate sum of money due, the law will imply a promise to pay the same, which implication of the law will be sufficient to support a declaration in assumpsit. In these cases debt or assumpsit will lie. But where there is a promise broken, but no determinate sum of money due in consequence of the promise, there debt will not lie, but assumpsit only, there being no determinate debt, until fixed by a verdict and judgment. There are also cases, in which the debt due would support an assumpsit, but from the manner in which the debt originated, as under the seal of the parties, by record, or on statutes, assumpsit will not lie.

In the case at bar, the defendant is indebted to the plaintiff in a determinate sum, not originating from any express promise, or any implied promise, but from the express provisions of a statute. If there is no debt due, there can be none, upon which an implied promise to pay can be raised; and as there is no pretence for an express promise, there can be nothing to support the action of assumpsit. If debt therefore will not lie, neither can assumpsit. If assumpsit will lie, so will debt. Debt, however, will lie, where assumpsit will not. Chitty says: "Debt is a more extensive remedy for the recovery of money than assumpsit, or covenant; for it lies to recover money due upon legal liabilities, or upon simple contracts expressed or implied, whether verbal or written, and upon contracts under seal or of record, and on statutes, by a party grieved, or by a common informer, whenever the demand is for a sum certain, or is capable of being readily reduced to a certainty." 1 Chit. Pl. 101.

It is said, however, that the defendant's liability is of a collateral nature, and that debt does not lie against a collateral party to a bill of exchange, or a promissory note. We might safely admit all this, and yet contend that the action of debt would lie in our case. One reason, why an action of debt will not lie against a collateral party to a bill of exchange or promissory note, seems to be, that the promise creates no debt, the debt subsisting only between the original parties; and the promise by the collateral party being, therefore, not to pay any debt due from him, but to pay the debt of an-

other. Bishop v. Young, 2 Bos. & P. 78. In the case at bar, the defendant cannot be considered as a mere collateral undertaker to pay the debt of another, but to pay his own debt. The debt of the Hillsborough Bank was also, by the act of incorporation, made the debt of the individual stockholders. Every bill, which issued from the bank, was created, issued, and received, not merely as the bill of an incorporation, but as a promissory note of certain persons in their corporate, and in their individual capacities. The corporation might be considered in the light of principals, the individual members as sureties; but both as original and not collateral parties to the bill. A collateral party to a bill of exchange or promissory note, is one, who becomes a party after the bill or note is created. But the individual stockholders, in their individual capacities, were parties to the bill by their act of incorporation, when the bill was created. They are not to be considered in the light of guarantors, putting their names on the back of the bill. but as sureties, whose names are mentioned in the body of the note, and who sign the bottom of the same. The signature of the president and cashier is to be considered, not merely as in behalf of, and as the act merely of, the corporation, but in behalf of, and as the act of, each individual stockholder. Suppose, therefore, the bill had expressed on its face everything, which the charter expresses, and each individual stockholder had signed his name to the bottom as surety, and their undertaking had been expressed in the body of the note, would it be pretended that the debt thus created would not become the debt of each, but that they were to be considered as collateral parties undertaking to pay the debt of another?

There is another reason, however, why the doctrine as applicable to an action against a collateral party to a bill or note, is not applicable to the case at bar, which is. that in the former, the sole foundation of the action is the express promise and undertaking of the collateral party; and as the debt is the debt of another, assumpsit is the only action which can be brought, and nothing can be demanded, but damages for the non-performance of the promise. In the case at bar, there is no express promise or undertaking of the defendant to found an action upon, unless he is to be considered as an original, and not as a collateral party: and there can be no implied promise, unless there is a debt due from the defendant to the plaintiff, for the law will not imply a promise on the part of A to pay the debt of B; and if there is a debt, then the action of debt lies, not to oblige A to pay the debt of B, but to pay his own debt. It must be evident, therefore, that it can only be in cases of express contract or assumpsit by a collateral party, that it can ever be a question, whether an action of debt

will lie against him or not, for there can be no implied contract, where there is no debt; and where there is no debt due, there can be no action of debt. And it would seem to be equally clear, that where there is a sufficient debt to support an implied assumpsit, then the action of debt may be brought to recover the debt, without resorting to the fiction of an assumpsit. And the action on the case need only be resorted to, where the damages cannot be liquidated but by the verdict of a jury, or where the cause of action is ex delicto.

There is also a further objection to the doctrine respecting collateral liabilities, as applicable to the case at bar. This action is not founded upon a simple contract, as in the cases of bills of exchange and notes of hand, but upon a specialty, to wit, a statute. It is in the nature of an action given to the party grieved, who may bring an action of debt to recover the sum given him by the statute. Com. Dig. tit. "Debt," A 1; 2 Inst. 650. The statute of 2 Edw. VI. c. 13, enacted, that if any person should take away tithes without setting forth a tenth of the same, he should forfeit treble the value of the tithes thus taken away. This statute neither provided by what form of action, nor by whom, the said forfeiture should be recovered. But it was determined, that the party grieved, to wit, the proprietor of the tithes, should recover this forfeiture by an action of debt. 2 Inst. 650. The act incorporating the Hillsborough Bank provides, that in case the stockholders or the corporation take away their property, or, in other words, divide their stock previous to the payment of all their bills, the stockholders shall be liable to pay the same, jointly and severally. So far the statutes may be considered analogous, as it respects the present question. The act of incorporation, however, provides to whom this payment shall be made, which is going farther towards the creation of a debt or debts between the present plaintiff and defendant, than the statute of 2 Edw. VI. went to the creation of a debt between the proprietor of tithes and the person thus taking them away. Furthermore, the sum demanded in the present case is more determinate in its nature than treble the value of tithes. Again, in declaring upon the statute of 2 Edw. VI. to recover this forfeiture, it must have been necessary to have set out as many naked facts, or matters in pais, as it is necessary to set out to support our action. In both cases, however, the liability and debt are created by statute; and the naked facts are necessary to ascertain the amount of the debt. When ascertained the debt immediately arises and becomes due, not created by the facts, but being entirely the creature of the statute, and having no existence in law or equity, separately and distinctly from it. Neither can any distinction in principle exist between the two cases from the consider-

ation, that the liability in one was the consequence of the act of the defendant, and the liability in the other in consequence of the act of a third party, by attempting to make a distinction between the corporate body and the individual stockholders. The act of the stockholders in their corporate capacity must necessarily have been the act of individuals; and especially, that act which tended to dissolve the corporation, and to disperse and divide its property, and which was illegal, could not have been a corporate act, but was the act of the stockholders as individuals, being a several act and not joint. If there is any foundation, however, for such a distinction, it is rather in favor of the action of debt than against it, because the action is founded, not upon any tort of the defendant, which might point to an action of the case, nor upon any collateral promise of the defendant, which might point to an action of assumpsit; but upon the positive provisions of a statute, which declares, that if A does not pay his debt, being a determinate sum, then it shall become the debt of A and B jointly and severally; or if A should convey away his property to defraud his creditors, the creditors of A may recover their debts of A and B jointly or severally. If such a statute would be constitutional, it would be difficult to bring any other action upon it, without having recourse to fiction, except the action of debt.

It has been said, that an action of debt will not lie upon all legal liabilities, or upon all statutes. This we are not disposed to deny; but we say, that all legal liabilities, which are created by statute, and which give to one person a right to receive a determinate sum of money from another, which right is entirely founded upon the statute, that such legal liabilities are a proper foundation for the action of debt. And this is not to be answered by saying, that debt will not lie upon collateral liabilities. All liabilities created by statute, not merely enforced by statute, are in their nature direct and not collateral. The statute creates the debt directly, whenever it creates the liability, that is to say, a liability for the payment of a determinate sum; and when this liability or debt is created, to what can it be said to be collateral, unless it can be collateral to itself?

It has been farther said, that the nature of the action depended upon the nature of the right, and not whether the right was or was not founded upon the statute. We are not disposed to contend, that an action of debt can be brought to recover land, or chattels, or damages for injuries done to persons or property, though the right of action might be given by statute. But where the right is to a determinate sum of money, there we say, if the right is created by statute, debt is the proper form of action. And we have seen no authority, which controverts this position, but it is supported by many.

The three questions which have been raised in this case, 1st, on the point of jurisdiction, 2dly, in reference to the statute of limitations, and 3dly, as to the proper form of action, are more nearly connected, than would at first sight appear.

1st. It has been already determined, that this was an action founded on the statute, and not upon a bank note, so that an action would well lie against the present defendant in the courts of the United States, where it would not lie, if founded upon the note.

2dly. This determines the question, whether the action is or is not grounded upon a specialty, so as to be or not to be within the statute of limitations; it being admitted by the defendant's counsel, that if grounded upon a statute, it is grounded upon a specialty.

3dly. If the action is grounded upon a statute or specialty, and is for a determinate sum, then the action of debt lies to recover the debt, which is so created.

The sum demanded is determinate; the right to this sum is expressly given by statute, which is a specialty. Therefore the action of debt well·lies, and it is not barred by the statute of limitations.

Mason, for defendant, contended: 1st. That debt did not lie in this case. 2dly. That the declaration did not allege those contingencies to have happened, on which, according to the true construction of the act, the defendant was liable. 3dly. That the statute of limitations was a bar to the action.

1. By this form of action the plaintiff intends to deprive the defendant of the benefit of the statute of limitations. If the statute of limitations cannot be pleaded to this action of debt, as the plaintiff contends, the question as to the form of action is unimportant. The action of debt never lies on a collateral undertaking or liability. It must be for the proper debt of the defendant, which raises a duty without any promise. Hardr. 485; Chit. Bills, 219, 220; Bishop v. Young, 2 Bos. & P. 78; 1 Chit. Pl. 94, 102, 106; Raborg v. Peyton, 2 Wheat. [15 U. S.] 385. Debt lies against the maker of a promissory note, but not against the endorser. The reason is, it is the proper debt of the maker, but the endorser is only liable on his collateral undertaking. So it has been held, that debt lies against the drawer of a bill of exchange, but not against the acceptor, for the same reason. The case in Hardress is against the acceptor. The authority of this case has been questioned in the supreme court of the United States, on the ground, that the acceptor's undertaking is not collateral. This does not injure the case for our purpose; for it implies, that if the debt is collateral, debt does not lie. This case is cited in Comyn's Digest (Com. Dig. "Debt," B 2, p. 368); and the reason there assigned, why debt does not lie against the acceptor, is, because the acceptance binds

him by the custom of merchants, but does not raise a duty. In Bishop v. Young the same principle is admitted. That was debt brought by the payee against the maker; and the court seem to rely on the acknowledgment of a consideration. Chitty states the same doctrine as to bills of exchange and notes; and says, that debt does not lie on any collateral contract. 1 Chit. Pl. 94, 102, 106. Where a statute creates a liability without prescribing the form of action, the form of action must be suitable to the case. Debt does not lie for all liabilities created by statute, any more than assumpsit, or case; the form of action follows the nature of the liability. The statute of Anne, making promissory notes negotiable, declares both the maker and endorser liable, without giving a form of action. Debt lies against the maker, because it is suitable for his case; but not against an endorser, because it is not suitable.

Where a statute gives a forfeiture of a sum of money, or penalty, the action of debt lies, because the statute creates a direct debt, and a consequent duty. 1 Chit. Pl. 104. But debt is not a more proper remedy upon a collateral security, than upon one created by statute. In this case the liability of the defendant is collateral. The note secured is not the note of the defendant, but of the bank. It is the debt of the bank, and the defendant is made collaterally liable for the default of the bank, which is the real debtor. The defendant's liability is like that of an endorser of a note; he is liable for the neglect of the bank to pay its debt. Although the defendant was a member of the corporation, he cannot be identified with it. They are as distinct as two natural persons. There are numerous instances of actions of the case on statutes very similar to the present. Action on the case is always brought on the statute of hue and cry, which enacts, that if the felon be not discovered, &c. "the hundred shall be answerable for the robberies done." 3 Saund. 374; 1 Lil. Ent. 275. The liability then, as in our case, is collateral. The hundred is made liable for the misconduct of another. Case lies on the riot act; which enacts, that the hundred shall be answerable for any injury sustained by the riotous destruction of buildings. Ratcliffe v. Eden, Cowp. 485. The statute of the 8th of Anne makes it the duty of the sheriff, on his taking chattels by virtue of a fieri facias from leased premises, to pay the landlord one year's rent, if in arrear; and authorizes him to levy the same out of the tenant's chattels. On this statute, case lies against the sheriff for neglecting to pay the year's rent. Lil. Ent. 46. Here debt was the proper action against the tenant, the proper debtor; but not against the sheriff for the collateral liability created by the statute. Case lies on the statute of 9 Geo. II. against malicious maiming of cattle, and burnings, which says, "The hundred shall

make full satisfaction and amends." 3 Saund. 378; Allen v. Inhabitants of the Hundred of Kirkton, 3 Wils. 318. The statute of 2 Edw. VI. against carrying away tithes, says, "Under pain of forfeiture of treble the value." 1 Com. Dig. tit. "Action upon Statute," F 328. And in the case of the College of Physicians v. Salmon, 1 Ld. Raym. 682, Holt, C. J., says, "Debt is a strain on that statute. The party should rather have had an action on the statute." Case was brought on the statute of New Hampshire, now in question, in the supreme court of Massachusetts, and no objection made to the form of the action, either by the counsel or the court. Bond v. Appleton, 8 Mass. 472. And case has been brought on the same statute in innumerable instances in the courts in this state. Shattuck v. Atherton, at the Hillsborough supreme court, May term, 1814, was debt on this statute; and the court intimated, in that case, an opinion, that debt would not lie; but the action was determined against the plaintiff on another point. There is no foundation for the notion, that debt is the proper action for a liability created by statute; nor that an action on a statute, as used in the books, means debt. The form of action depends on the nature of the liability. Chitty's observation, that "debt lies for legal liabilities" (1 Chit. Pl. 100), if understood to include all liabilities created by statute, when no special form of action is given, would be grossly incorrect. That is not his meaning. He cites for authority Hob. 207, which is debt against a sheriff for money levied on a fieri facias. Indeed the instances, where case is brought on statutes creating a liability without prescribing the form of action, are nearly as numerous as the instances of debt. 2 Chit. Pl. 288–290, et passim.

2dly. The declaration does not allege the contingencies to have happened on which, according to the true construction of the act, the defendant is liable. The first count rests the liability of the defendant on the refusal of the bank to pay the note. The second, without alleging a presentment for payment, or refusal by the bank to pay, rests the liability on the corporation's having divided the stock and funds among the several members, while many notes, and this among others, were unpaid. The true construction of the act is, that a member shall be liable on a division of the stock, and refusal of the bank to pay, taking both contingencies conjunctively. There is no such privity between the individual members and the corporation, as under ordinary circumstances can make it proper or just to compel the member to pay the debt of the corporation. The member is distinct from the corporation, and has no control over it. The object of the act was to protect individuals against eventual loss. It was not intended to enable the bank to discount on the personal credit of the individual members. Banks have been incorporated to

discount on landed security; but never, it is believed, on the personal security of its own members. The act limits the amount of the debts, which the directors may contract, in a certain proportion, to the amount of the stock, and makes the directors answerable personally for any excess. No danger was apprehended, while the debts should be kept within prescribed limits, to insure which the directors were made liable for exceeding them; unless the bank should refuse to pay, and be also unable to pay, by having divided among the members its funds. Instances have occurred of a fraudulent division of the stock of certain corporations among the members. If the object had been, to protect against the neglect of the bank to pay, when there had been no division of stock, and of course, no inability, a speedy remedy against the bank or its officers would have been given. A mere neglect to pay is not evidence of an inability. In the case of a doubtful demand, the refusal to pay might be proper and justifiable. So the division of the stock, after making suitable provision for the payment of debts, is no injury to any body. This usually takes place at the dissolution of corporations, and before all debts are paid. If the act had intended to make the stockholders liable without a division of the stock, and while the bank was able to pay, it would surely have given the stockholders a remedy over against the bank. But the act gives the stockholder, who shall be compelled to pay the debts of the bank, a remedy only against his co-stockholders by way of contribution.

If the liability is limited to the double contingency of a refusal to pay, and a division of the stock, no remedy over against the bank would be expected, as it would be of no value, the bank being insolvent. The making the stockholders liable on a division of the stock among them, and a refusal to pay, may be deemed necessary for the public security, and also reasonable, as the stockholders must, in such a case, have been guilty of a gross fraud. The other construction, without a necessity for it, must occasion great injustice, and therefore will not readily be supposed to have been the intention of the legislature. The stockholders being distinct from the corporation, that construction makes one person, for no cause, pay the debt of another. It was no crime to become a stockholder. Persons may become stockholders by operation of law, by the assignment of a distributive share of the estate of a deceased relative. Yet in whatever way a party becomes a stockholder, he is made answerable to an indefinite amount, and for an act, which he could not control. To avoid this manifest injustice, the disjunctive "or" must be construed to have a conjunctive meaning. No word is so often substituted for another as "or" is for "and." In 1 P. Wms. it is said, "or" is usually put for "and." So in 2 Eq. Cas. Abr. 368, in

note. A sufficient reason for substituting one of these words for the other, is to avoid what would be unreasonable. In a devise in fee to A B, and in case he dies under twenty-one years of age, or without issue, devise over; "or" was construed "and." The reason assigned is, that it would be unreasonable to suppose, that the testator meant to disinherit the children born before the devisee attained to the age of twenty-one. 2 Bin. 545. The same construction is given to this word in common law conveyances, and for the same reason. 3 Term R. 470. It is the same too with statutes. "Children whose fathers and mothers are subjects, although born beyond sea, shall not be deemed aliens." Here the word "and" is construed "or," because it would be unreasonable to suppose, that the legislature meant otherwise. 1 Bac. Abr. tit. "Alien," 126. Statutes are often construed contrary to the meaning of the words used in them, in order to avoid an injustice, which the legislature could never have intended. "Judges have power over statutes to mould them according to justice and reason." 6 Bac. Abr. 378, H. Greater liberties seem to be taken in the construction of private, than of public acts. Judge Blackstone says, that they have been held to be void, if contrary to law and reason. Bl. Comm. 346; Lord Cromwell's Case, 4 Coke, 12; 2 Vern. 711.

3dly. The statute of limitations is a bar. It will be admitted, that the statute bars any action, which can be brought against the bank, and yet it is contended, that an incidental liability for the same debt is not barred. No case can be conceived, where there would seem to be more reason for a short period of limitation than the present. By the delay in bringing the action, the defendant's remedy for contribution from his co-stockholders has become of no value. They are, for the most part, dead or insolvent. Our statute of limitations is copied from the English. All actions of debt, "grounded on any lending or contract without specialty shall be brought within, &c." This is an action on a contract without specialty. It is substantially an action on the note, not on the statute. This is no more an action on the statute, than an action against the bank to recover the contents of the note would be. In such an action the statute must be recited. The defendant is supposed to have contracted to perform all the duties imposed on him by the act. The contract is implied. The endorser of a promissory note is liable on his contract; yet he makes no express contract by his endorsement to pay the money on the refusal of the maker. His liability arises out of his endorsement, as does the defendant's from becoming a stockholder. The statute of limitations is a bar to the action of debt on foreign judgments, because the action is founded on a contract, and the foreign judgment is not a specialty. Dupleix v. De Roven, 2

Vern. 540; Hubbell v. Coudrey, 5 Johns. 132. There is more reason for saying, that the action is founded on a contract, than that the action on a foreign judgment is. The English cases on this clause of the statute of limitations rest on a narrow construction of the statute, and on reasoning which is not very satisfactory. Ball. Lim. 86 et seq.

Smith, on the same side. 1st. Does debt lie? The action of debt is not given by the statute. Statutes sometimes give debt, where, upon common law principles, it is not the proper action. But statute makers have a right, in such cases, to be wrong, and the action prescribed must be resorted to. Where a statute gives a right of action, and does not say what action, the common law out of her abundant treasury supplies a remedy, and declares, what action lies. The nature of the case determines the form of the action. Where a statute enjoins or forbids, &c. under a penalty, debt lies against the wrongdoer, the party disobeying, &c. Blackstone (3 Bl. Comm. 160, 161) considers him as having contracted to pay the penalty which he owes the injured party, or common informer, as the case may be, according to the amount, at which the legislature has estimated the damages. The act or omission of the party implies an agreement to pay the stipulated sum. The legislature has made it a duty, directly due from the wrongdoer to the plaintiff. If the statute merely subjects the wrongdoer to damages, case is the proper action. In the case at bar, the bank receives the plaintiff's money, and promises to pay him the same sum; or the bank has received the money of A B, and promises to pay him, or whoever shall be the holder of the bill. Here the bank is the debtor, and the holder is the creditor. A debt is created by contract, and debt lies. But the statute goes farther. It creates a liability under certain circumstances, in certain individuals, who, independent of this special provision, are strangers to the contract of debt, &c. This liability does not resemble that of a sheriff or gaoler for an escape, &c.; that is, on the score of wrong done to the creditor. A statute has, in certain of these cases, given debt; where it has not so done, the common law has given case, which is the proper action.

In the case at bar the defendant is in no fault, and there is no act done by him; there is no privity between him and the holder of the bill, or between him and the bank. He is a stranger to both. The debt, of which the bill is evidence, is a debt due from the bank. It is in no sense his debt. He received no consideration for it, and has made no contract, express or implied, for he is an entire stranger. Perhaps the statute might have arbitrarily declared, that on non-payment by the bank, every such bill should thereupon become the debt of certain individuals, the president, cashier, and stockholders; (the learned Matthew Bacon, in treating of the vast power of a statute, observes, that a statute can do no wrong; yet it may do some things, which seem very strange;) such a statute declaration might perhaps have warranted the action of debt. But this statute has not done so. It has merely created a liability in one man to pay the debt of another; of a stranger to pay the debt of the bank. The common law will enforce this liability, and make it effectual; but it will do so according to its own rules and maxims. The action is not against the defendant as a wrongdoer, or in favor of the plaintiff, as a party aggrieved, technically speaking. 2 Term R. 155, 158; 3 Term R. 104. In the language of the books, an advantage is given to the billholder by the statute, to recover of the defendant, in some form of action, his debt due from the bank. Com. Dig. tit. "Action upon Statute," A 2. It is admitted, that debt lies in certain cases of legal liabilities, and that there is no objection here on account of uncertainty in the sum. 1 Chit. Pl. 101 et seq. The principle seems broad enough to embrace this case; but it is nowhere said, that debt is the proper action to enforce all legal liabilities. It is no more true, that debt lies in all cases of legal liabilities, than in all cases of liabilities or obligations, created ex contractu; whether debt or some other action, depends on the nature of the case. The action may be debt, assumpsit, or case; sometimes either.

Debt, as we have seen, lies for a penalty; the duty, the liability, is direct. There is a privity of contract or quasi contract, where any contract can be supposed. And in all other cases, the wrong done by the defendant to the plaintiff or to the public, whom the plaintiff represents, is direct, and where the damages are uncertain, case lies. 1 Chit. Pl. 144; 2 Saund. 374, note 1. Where the law creates a duty in one man, on certain facts happening, to recompense another, a promise is implied from the one directly to the other, and assumpsit lies. 1 East, 227; 7 Term R. 36; 6 Johns. 1. Our pauper causes are of this description. Com. Dig. "Action upon Statute," A 3, and "Pleader," C 76; 1 Chit. Pl. 108; 2 Term R. 28, 30. Who ever thought of bringing debt in such a case? And yet the statute makes the town chargeable; the place of settlement liable to repay the sums expended. But it is the money expended, not for the support of the defendant, but of another, the pauper. If it was for the support of the defendant, debt would lie. Debt does not lie for an escape, other than that of a person in execution. The act of the defendant is wrongful and injurious to the plaintiff. The defendant is onerabilis, but he does not owe. He is not indebted, unless declared to be so in express terms. There must be privity to warrant debt, unless the action be ex maleficio for a penalty. In the case of a legacy

charged on land, the devisee is liable in debt in respect of the land; he contracted to pay the debt, to make it his own, when he took the land. So it is with his alienee or tertenant. There is in these cases a priv.ity of estate. 2 Salk. 415; 6 Mod. 26. But debt does not lie on a collateral contract, whether the liability be created by statute or contract, but assumpsit (1 Chit. Pl. 94, 106, et seq.), for it is not the debt of the defendant.

There may be two actions at the same time, to recover the same thing, but the grounds are altogether different; one defendant is liable directly, for a debt due from himself to the plaintiff, the other is liable only collaterally, for default of the first, the real debtor. When did the sum sued for in the action at bar, become the debt of the defendant? Before the presentation to the bank? This will not be pretended. If it was once the debt of the bank, it is always so. On a promise to pay the debt of another, although in writing debt does not lie, the defendant in such case is chargeable, but not as a debtor. Hardr. 485; 1 Salk. 23; Cro. Car. 107, 193; 2 Bos. & P. 78; Com. Dig. "Debt," B. If the defendant had received money of the plaintiff, or one under whom the plaintiff claimed, this might create a duty, and so a debt in respect to that. 2 Bos. & P. 83, 84; Salk. 23; Selw. N. P. 469; [Thompson v. Jameson] 1 Cranch [5 U. S.] 288, et vide App.

The defendant's situation is that of an endorser; an endorser for the honor of the drawer, made so by the statute, nolens volens. He is a guarantor, and that merely. Here the statute creates no greater liability than the custom of merchants; that is, the common law. An acceptor is not liable to the holder in debt (Selw. N. P. 469, cites 2 Bos. & P. 78; Salk. 23), and yet the acceptor may have funds received from the drawer, and seems to have made himself debtor. It is too late in the day to say, that debt lies against an endorser or guarantor. It is being wise above the wise men, who framed the action of debt. One would hardly look for discoveries at this day, as to an action better understood three centuries ago than now. There were moreover reasons for a latitude of application of this action in ancient times, before case and assumpsit were introduced to prevent a failure of justice; yet it is believed, that the old cases are decidedly against the action, on facts such as are presented by the case at bar. The case nearest to this in point of circumstances, is the liability of hundredors for a robbery, on the statute of hue and cry; the action is case. Debt on indebitatus assumpsit does not lie for a wager, because it is said the money becomes due in a collateral respect. Walker v. Walker, 5 Mod. 13. Debt does not lie on an agreement by defendant, when the consideration was something done or delivered to another. Com. Dig. "Debt," B

2dly. Does this case come within the statute of limitations? Is it "an action of debt, grounded on contract, without specialty?" This action is not ex maleficio. It is not for a penalty. The only charge against the defendant is the non-payment of a note made by the bank; his not paying the note of the bank. The action against the sheriff for an escape in execution is ex maleficio, though in form of debt, therefore not grounded on contract. The common law would not have given debt; when a statute gives it, it does not change the nature of the transaction, or turn a pure tort into a contract. So the action of debt against the sheriff, for not paying over money collected on execution, is more than a non-feasance; it is a breach of trust, and so held not to be within the statute.

It will be admitted, that this action is founded on a contract; but contended, that that contract is a specialty, a statute, the last section of the statute creating the bank. On our part it is admitted, that without this statute there would be no duty, no liability; but the case is the same as to the action against the bank. Is this action on the statute? The declaration states certain facts; on these the action is founded. The action is founded on that note of the bank, the contents of which it is brought to recover. On what is our action for the support of paupers founded? Not on the statute, for then assumpsit would not lie. The cases are analogous. In both the liability is created by statute, and by that alone. There are many similar cases. Certainly the statute is not the foundation of the action in the same sense, that a bond, a judgment, &c. are. If so, nil debet would be a bad plea. The statute merely declares the law upon certain facts; it is no more the ground of the action than the common law is the ground of the action of quantum meruit for labor and service performed. Chitty classes debt under four heads. 1st. Simple contracts and legal liabilities. 2dly. Specialties. 3dly. Records. And 4thly. Statutes. 1 Chit. Pl. 475. In debt for a penalty there is no contract. An action founded on a specialty is founded on something, which, when proved, is conclusive; as a bond, judgment, penalty. Prove the facts in respect of which the penalty is given, as they are stated in the statute, and in such case there is not much impropriety in saying that the action is founded on the statute. The statute gives expressly in many cases the action of debt, when the common law would not give it; and then the action is emphatically founded on the statute.

The foundation of the present action is an implied promise, raised by statute on the existence of certain facts, as on the promise, which the common law raises for the work done without any agreed price. Is not the suit against an endorser founded on the note or bill? This statute does what the party

himself does in that case; it binds him to pay the note or bill on certain contingencies. This is a strong case for the statute of limitations. The facts, which constitute the defendant's liability, are not proved by the statute, as a judgment proves a debt; they are matters en pais, as the making of the note, the presentation, the defendant's being a stockholder at the time of the refusal, &c. Is there not the same negligence in the holder of the bill, the same danger of perjury, &c. as in other cases? It is clear, that assumpsit would lie in this case, on the ground of the contract. If so, the statute of limitations is a good bar, and the action is not founded on the statute erecting the bank. But the plaintiff substitutes the word debt for case; and this deprives the defendant of the protection of the statute of limitations, and the action is founded on a statute or specialty. Is not the action as much founded on a statute in one form of declaring as in another? It is apprehended, that little regard to system, principles, &c. has been manifested in the decisions on this subject. 1 Mod. 246; 2 Mod. 212.

The statute of limitations may be pleaded to indebitatus assumpsit, brought against the sheriff for money levied on a fieri facias; but it cannot be pleaded to debt. 1st. Because there is no contract; the action is ex delicto. This seems reasonable enough, if true. 2dly. Because the action is founded on a record-specialty. This cannot be the fact; for then indebitatus assumpsit would not lie. The true reason, why the statute is not pleadable to debt, is, that the action is founded on tort, though the statute gives debt; but the court looks through the form to the substance. In 1 Mod. 246, it is stated, that the statute of limitations is not pleadable to an action by an attorney for his fees, because they depend upon a record here, and are uncertain. In 3 Lev. 367, it is held the more reasonable doctrine, that fees should not be considered as depending on record merely, because lawyers earn them in court, or because they are officers of the court. The good sense of the thing is, that the action, whether assumpsit or debt, is founded on the defendant's implied promise, created by the statute. It is on contract, not on specialty. It is impossible to distinguish the present action, as to its ground or foundation, from the action for the support of paupers, which is not on specialty. If this action is on specialty, so is that.

Davis, (Solicitor-General,) for plaintiff, in reply.

Two questions are presented by this demurrer. 1st. Will debt lie? 2dly. Is the statute of limitations a bar?

As to the objections to the form of the declaration, I cannot consider them of any weight; they are suggested by one of the opposite counsel, but not relied upon by either. The first of these objections is, that there is no notice to the defendant alleged, of the refusal of the bank to pay. This is not correct in point of fact. The statute renders the defendant liable upon demand of the bills at the bank, and refusal to pay. The declaration alleges this demand and refusal to have been made upon the defendant himself. It is absurd to say, after this, that no notice is alleged; no other notice is required by the statute. The fallacy of the whole of the argument of the defendant's counsel commences here, viz. by comparing the liability of the defendant, to the liability of an endorser of a note of hand, or acceptor of a bill of exchange; and applying the principles of such a liability, to that of the defendant in the present case. The second objection to the declaration is lighter, if possible, than the first; it is, that the averment, that the bills were signed by the president, is insufficient. The allegation is, that they were signed by the defendant "as president." If this averment is not sufficient in technical strictness, it cannot be bad on general demurrer; it certainly would be good after verdict, and therefore is not bad on general demurrer to the plea. The same remark may be applied to the other objection to the declaration; that part of it, which relates to the notice, or rather the demand upon the defendant, would be good after verdict, or upon general demurrer, if it can possibly be supposed, that it is not technically correct in this respect.

As to the first point presented by the demurrer, viz. Will debt lie in this case? I shall state, 1st. the principles and authorities, upon which we ground the action; and 2dly. I shall answer the objections of the defendant's counsel.

1. There is no case in the books precisely like this. It must be decided, therefore, upon general and analogical principles, in the application of which the court will be astute to maintain the action, as the defence rests, not upon the merits, but merely upon the form of the action. The court will readily recognise the following principles and authorities: Debt is a more extensive remedy than assumpsit. If neither debt nor assumpsit lies, there is no remedy. If either debt or assumpsit lies, it follows from the principle above stated, that debt will lie. Debt lies upon simple contracts, either express or implied. Com. Dig. "Debt," A 9. The liability of the defendant, is either on a simple contract or on a specialty. If on the former, debt lies; if on the latter, debt lies beyond all doubt. Debt lies for all legal liabilities, though there is no contract; as against a sheriff for money collected on an execution, it is quasi ex contractu. 1 Chit. Pl. 101; Speake v. Richards, Hob. 206. I can conceive of no difference, whether the liability is created by the common law or by statute. That debt lies upon a liability created by statute, cannot be doubted. Debt lies also upon a by-law, as on a specialty. 1 Bos. &

P. 98. Debt lies upon an act of parliament, though it is not said by whom, or by what action, it is to be recovered. Com. Dig. "Debt," A 1. It lies for the party aggrieved, as on the statute regulating the practice of physic, half the penalty to the king and half to the college. It lies upon the statute against extortion. And upon the statute for treble value, in not setting out tithes. Id. The parties aggrieved, under the above-recited statutes, are those, to whom the forfeitures accrue. Why is not the plaintiff in this case a party aggrieved, by the non-payment of the bills, in a much stronger sense, than those, who are entitled to recover the penalties in the abovementioned statutes?

Further. Debt lies upon every statute, made for the remedy of any mischief, injury, or grievance (Com. Dig. "Action on Statute," A 1); nothing can be more extensive. It lies, when a statute gives accumulative damages to the party aggrieved (Woodgate v. Knatchbull, 2 Term R. 154, per Ashurst, J.), and this is not a penal action. The cases here stated are from Comyn's Digest, under the title "Action on Statutes"; but the words of the authority are the same as are made use of by the same author, under the title "Debt"; which shows, that an action upon a statute, "made for the remedy of any mischief, injury, or grievance;" or actions upon statutes, giving "accumulative damages to the party aggrieved," may be actions of debt. This action lies also on a statute giving a recompense. I say this action lies; for though this principle is stated in Comyn, under the title, "Action upon Statutes"; there can be no possible difference between an action by "a party aggrieved for an injury or grievance," (for which debt unquestionably lies) and an action for a recompense. Debt lies upon all statutes, by the party aggrieved, where the sum demanded may be reduced to a certainty. 1 Chit. Pl. 101. This principle comes up to our case. The sum demanded is the amount of the bills mentioned in the declaration, which may be "readily reduced to a certainty." But it is not necessary to recover the precise sum demanded. Walker v. Witter, 1 Doug. 6. And whenever a statute gives a right to damages, reduced to a certainty by the provisions of the statute, debt lies, if no other remedy is pointed out by the statute. Bigelow v. Concord Turnpike Corp., 7 Mass. 204. These are the general principles and authorities, which, we think, will justify us in bringing debt.

2. The answer to arguments and objections of the defendant's counsel. I make no answer to the objections of one of the counsel, that we have no remedy, unless there has been a division of the stock as well as a demand at the bank; and that the statute creating this corporation, is against reason and good morals. I understood at the trial, that both these objections were considered by the court as of no validity. The arguments of both the learned counsel, so far as I understand them, are comprised in two objections. 1st, that debt does not lie, because the liability of the defendant is of a collateral nature; and 2dly, that debt does not lie upon general principles.

As to the 1st objection. The whole support of this objection rests upon the case in Hardr. 485. I cannot contemplate a foundation more frail or baseless. In the first place, nothing is decided in that case, except that debt will not lie against the acceptor of a bill of exchange; and the whole argument of the defendant's counsel is placed upon this ground, viz. that the liability of the defendant is similar to that of an acceptor of a bill of exchange for the honor of the drawer. A sufficient answer to this authority is, that it has been overruled by the supreme court of the United States. I presume the decision of the supreme court was upon the ground, that the case in Hardres is not law. It is clear to me, that that case ought to have been decided in favor of the action, for the very reasons assigned for the decision against it. It stands alone, and wholly unsupported by any subsequent decision. It is quoted, it is true, by Chief Baron Comyn, in the same way, that he quotes every thing else from the books, out of which his Digest is compiled. But no additional sanction or authority is thereby given to it. It is barely referred to in the subsequent case in Bos. & P. (Bishop v. Young, 2 Bos. & P. 78). But Lord Eldon gives no opinion upon it; barely states the result; and in the conclusion of his opinion, leaves this question undecided. He cautiously avoids giving any opinion upon the very question decided in Hardres. But admitting the case in Hardres to be law, there is not the most distant point of resemblance between that case and this. I shall contend in the first place, that the liability of the defendant in this case is original, not collateral. And in the second place, that it is created by a specialty of the highest nature, a public statute; and therefore not only that debt is the proper action, but that it is the only proper action for this liability; and that assumpsit or case would be wholly incorrect or technical.

That the liability is original, as to the defendant, results from the nature of the instrument. This instrument is a charter, or grant, from the government to the stockholders. The government is one party, the stockholders or corporation, is the other; hence there can be no third party, as is the case of an acceptor of a bill of exchange; and consequently, there can be no collateral undertaking, by a third party, to pay the debt of another. The debt for which, in this case, the defendant is liable, is the bank note; for the payment of which, the defendant is bound by the terms of the original grant or contract with the government, in two capacities; one

as a member of the corporation, the other as an individual stockholder. It is not that two persons are liable, one originally and the other collaterally for the same debt; but the case is, that one and the same person is liable, in two different ways, for the same debt; but both these ways, or modes of liability, are created at the same time, by the same instrument, and, what is still stronger, upon the same consideration. It is said, the reason, why an acceptor is liable, is because he has funds. Answer; the defendant has the funds of the bank always in his hands. He had a full, as well as original consideration; that of a right to make bills, and issue them as cash. These are his funds, and this a most complete and ample consideration. What constitutes a collateral liability? It is this, that it is for the debt or the default of another. There is nothing like this in the defendant's case. When he accepted the charter, and made himself a stockholder, he became bound to pay the bills of the bank, by an express stipulation, to which he voluntarily assented for his own benefit; and his individual credit and property were thereby pledged to the holder of the bills to fulfil this stipulation. To apply, therefore, the principles of a collateral liability, such as a liability to pay the debt of another (which is the ground of the decision in Hardres, according to Lord Eldon) to the liability of the defendant in this case, seems to me a gross legal absurdity. What other person's debt is the defendant liable for? They say, that of the bank. Who is the bank? It is the defendant himself. The notes in the declaration are the notes of the defendant himself; for the payment of which his property, both corporate and individual, is originally pledged by the charter. To these general principles, it may be added, that it would be a manifest violation of the intention of the government, and of the security intended to be provided for the public by the provisions of the charter, to suffer the defendant to escape payment, upon such distinctions as are set up for him in this defence. It is well known, that in the numerous banks, with which the public were inundated about this time, there was no security against fraud and peculation upon the credulous people, unless the ostensible and tangible property of the individual stockholders. was rendered liable for the debts of the banks.

But the strongest, and in my mind, the unanswerable argument in favor of our action is, that the liability of the defendant, whether it be original or collateral, is created by a specialty of the highest nature, viz. by a public statute. I say a public statute; for a statute incorporating a bank, has been always held to be a public, not a private statute. The reason given, why the acceptor of a bill of exchange is not liable in debt is, that his acceptance or liability amounts only to a promise, but creates no debt or duty. When it is admitted by the learned judges of the golden age (Charles II.), that debt will lie upon simple contract, and yet that it will not lie against the acceptor of a bill of exchange, which acceptance is a simple contract, it seems difficult to understand their reasoning, and still more to be convinced by it. The fact is, that little credit is due to the opinions of the judges of that day, upon the law of contracts, especially of commercial contracts. The improvements in this science by modern judges, both in England and America, furnish more light in one year, than was furnished for a century, either before or since the reign of Charles II., by all the judges in Westminster Hall.

It was asserted by one of the defendant's counsel, that "debt does not lie upon a collateral undertaking, whether created by statute or otherwise." I deny this position. And I asked for the authority, upon which it was made, but it was not produced. In my opinion, no such authority exists; if it did, it would have been produced; for it would cut up, root and branch, the strongest point in our favor. There can be no such position in law. The remedy for all liabilities must be according to their nature. If the remedy is pointed out by law, or by statute, it must be pursued. If it arises from analogy and general principles, it must be pursued according to, and consistently with, those principles. What if a collateral liability is created by bond or covenant under hand and seal? Will not debt lie for such a liability? Who will say that it does not? If debt does lie in such case, it is because the liability is created by specialty. Is not a statute a specialty? The books are full and decisive, that it is. To say or to admit. therefore, that debt will lie for a collateral liability, created by one kind of specialty, viz. a bond or covenant; and deny that it will lie for a collateral liability, created by another kind of specialty, viz. a statute of a public nature; is an absurdity, that will gain no ground in this court. The truth is, as before suggested, no action, but the action of debt, can be supported upon legal and technical principles and practice, for a liability created by statute, whether such liability be collateral or original. The simple question, therefore, in this case is, Is the liability of the defendant created by statute? It would be offensive to common sense to deny, that it is.

In order to avoid the necessary consequences of these principles, the positions taken by the defendant's counsel are untenable throughout. It is admitted, that "debt will lie against the party neglecting to perform a duty required by statute." What is the duty required by this statute? It is for the stockholder to pay the bills of the bank, in the case stated in the declaration. It is for the non-performance of this duty, that debt is brought in this case. It is admitted, also, that a debt is created by the notes of the bank; but it is said, that the defendant is a stranger, independent of the act. True,.

he would be a stranger, independent of the act; but the act has made him responsible for this debt; therefore by the act, he is no stranger; and this action, being founded on the act, is for that reason maintainable against him. It is also said, that this action is not by a party aggrieved; but it is admitted, that it is for a "recompense" or an "advantage." I have shown, that it is by a party aggrieved; and that debt will lie for such a party to recover a recompense. The other cases are as easily answered, viz. that case is the action "in torts and wrongs by statute." This is no case of that description. The liability of towns to maintain paupers, is referred to. We answer; these actions against towns are not on the statute, but on the account against the town, pursued and recovered in the mode pointed out in the statute. And above all, it is said, the statute gives no liability beyond the custom of merchants; and that the defendant is an endorser, made so by the statute, precisely and exactly for the honor of the drawer. How is it possible, that learning and talents can stray so out of the legal path? I should almost be willing to admit these positions, if it were not for their manifest incorrectness. Why is the endorser or acceptor answerable? Because he has funds, or because he agreed to accept, either before or at the time the bill is drawn. Now the defendant is in both those predicaments. He had funds, the stock and property of the bank; he accepted, or became answerable, upon a full and personal consideration; and he agreed to pay the bill, in the case stated in the declaration, before it was drawn; that is, when he took his charter, and agreed to the terms of it. One or two other cases and principles are relied upon. The statute of hue and cry. Pinkney v. Inhabitants of East Hundred, 2 Saund. 374, 379. No other answer to this case if necessary, than to state, that the action was in the nature of an action of trespass, as stated by Saunders; but in the original declaration, it does not appear, whether it was trespass, debt, or case. From the nature of the case, although the recompense was given by statute, the damages to be recovered could not "easily be reduced to a sum certain." Therefore, it does not come within the reason of those cases, where it is admitted, that debt will lie. The case of the Huddersfield Canal Co. [v. Buckley] 7 Term R. 36, is answered in a single word. The statute directed the recovery to be, either "by action of debt, or on the case"; the plaintiff in that case elected case.

2. Is the statute of limitations a bar? This question depends wholly upon authorities, and upon the nature of the statute of limitations. This statute is not to be favored; and is not to be extended by implication to cases not mentioned in it. This is the case of a record, and of a specialty; the presumption, that evidence is lost (the reason of the statute) cannot apply in this case. There is no lending, such as debt would lie for, in the case of the actual lending of money. Debt upon an award is upon a specialty, and so not within the statute. Jones v. Pope, 1 Saund. 37. This statute is no plea against a suit for attorney's fees, because a matter of record, which is a specialty. 2 Saund. 66. The statute of limitations is no bar to an action upon the statute of 2 Edw. VI. c. 13, for not setting out tithes. Debt lies upon this statute. Jones v. Pope, 1 Saund. 33; Talory v. Jackson, Cro. Car. 513. Same case in Freeman's Reports. North, C. J., says, the "reason why this statute (of limitations) is no bar, is, because it is founded on a statute." Freem. 237. The statute of 2 Edw. VI. is a specialty, and not within the statute of limitations. Com. Dig. "Temps," G 15. If judgment should be in favor of the plaintiff, we shall claim interest; upon which the court will be pleased to hear us.

After the argument, the cause was continued for advisement. And now, at this term, the opinion of the court was delivered as follows:

STORY, Circuit Justice. This cause has been argued with a diligence and ability, worthy of its importance. The learning upon the subject has been nearly exhausted; and if the opinion, which we are now to pronounce, be not free from doubt or difficulty, it is certainly not from any neglect of counsel to furnish all the proper lights of principle and authority. There are two questions: First, whether the plea be a good bar to the action; secondly, if not, whether the action itself be well brought.

In respect to the first question, the statute of limitations of New Hampshire (Act June 16, 1791), which, in this respect, is a mere transcript of the statute of 21 Jac. I. c. 16, § 3, bars "all actions of debt, grounded upon any lending or contract without specialty, and all actions of debt for arrearages of rent," unless commenced within six years next after the cause of action accrued. Nothing can be clearer, than that this is not a case of lending; and it would be very artificial reasoning to consider it a case of contract. It is certainly not a case of express contract; and the most that can, by the utmost straining, be asserted, is, that it is a case arising quasi ex contractu. It is in truth, however, a mere legal liability, created by statute, which may furnish the foundation or consideration of a contract express or implied; but is not of itself a contract. The reasoning in Mr. Justice Blackstone's Commentaries (3 Comm. 160, 161), on the subject of implied contracts in cases of fines, forfeitures, amercements, and judgments, is very refined and ingenious in theory; but it never has to its full extent been admitted in practice, as the foundation of legal remedies. If it were universally true, then indebitatus assumpsit would lie to recover a

fine on a criminal sentence, or a penalty or forfeiture upon a penal statute, which certainly cannot be pretended. And even supposing, that the law, for the sake of a remedy, would allow a party, by a fiction, to change a wrong into a contract; it does not follow, that the wrong is merged in contract, until the party has definitely bound himself to consider it exclusively in that character. If a person unlawfully converts and sells the property of another, it is properly a tort; yet the injured party may waive the tort, and bring assumpsit for the proceeds. But until he has so made his election, and created an implied contract, the wrongdoer cannot protect himself by any defence, founded upon the supposed existence of a contract. In the present case, the plaintiff has not declared on any contract, nor has the law necessarily created one; and, therefore, in this view, the plea cannot on principle be supported. But if it were otherwise, the statute of limitations applies only to contracts, not grounded on a specialty. Now, the present action is founded on a statute, which the law deems for this purpose a specialty; and for this reason also the plea is bad. If the case were new, therefore, we should have no difficulty in overruling the plea; but the point has been directly decided by authorities, which cannot now be controverted. Jones v. Pope, 1 Saund. 37; Hodsden v. Harridge, 2 Saund. 61, 65; Com. Dig. "Temps," G 15; Talory v. Jackson, Cro. Car. 513. But although the plea be bad, yet if the declaration be bad also, the defendant has a right to take the exception. and judgment ought to be rendered against the party committing the first fault. Several exceptions have been taken to the declaration, on account of its. inartificial structure and defective averments. I shall pass them all over, not because they are without foundation, but because the declaration, though drawn with great inaccuracy and unskilfulness, contains sufficient matter in substance, on which, in case of a general demurrer, to found a judgment, if the action itself be rightly conceived.

And this brings us to the second question, whether debt lies in this case; a question which, though purely technical, goes to the very marrow of this cause; for under existing circumstances, if the plaintiff has not this remedy, he is probably barred of every other by lapse of time. Many cases have been stated at the argument, in which an action of debt will lie. It is said, that it will lie upon express and implied contracts, and upon legal liabilities. This is certainly true; but it is true to a limited extent only; for it will not lie upon all simple contracts, nor upon all legal liabilities. It will not, for instance, lie upon a mere simple contract to indemnify a party, or to do any other act or thing, except to pay money or deliver goods. In respect to liabilities or rights created by statute, where no specific action is given, debt is often a proper, but is by no means a universal remedy. It is very correctly laid down by Chief Baron Comyn (Com. Dig. "Action on Statute," A 1), that upon every statute made for the remedy of any injury, mischief, or grievance, an action lies by the party grieved, either by the express words of the statute or by implication; and that such action shall be a recompense to the party. But the action here spoken of is not any one specific remedy; but an action adapted to the nature of the case, and moulded according to the forms and distinctions of the common law. It may be an action of debt, or assumpsit, or trespass, or case, as the particular nature of the wrong or injury may require. For instance. Lord Coke informs us, that upon the statute of Magna Charta (9 Hen. III. 29), which enacts, that no free man shall be arrested or imprisoned, &c. unless by the law of the land, if any be imprisoned contrary to law, he may have an action founded upon this statute. 2 Inst. 55. No person can suppose, that debt or assumpsit would here be a proper form of action; but the proper remedy would be an action of trespass, or (as Lord Coke seems also to intimate) a special action on the case. Id. So, since the statute of wills (32 Hen. VIII. c. 1), a devisee of money to be paid out of lands may maintain an action upon the statute for the money against the terretenant; and the proper action, according to the analogy of the common law, is debt. Com. Dig. "Action on Statute," A 2; 6 Mod. 27. So upon the statute of hue and cry, (13 Edw. I. St. 2, cc. 1, 2), which makes the hundred "answerable for the robberies done and the damages," an action on the case, and not an action of debt, lies for the party grieved; for the cause sounds properly in damages. Ratcliffe v. Eden, Cowp. 485; Allen v. Inhabitants of the Hundred of Kirkton, 3 Wils. 318; 1 Chit. Pl. 143, 144. And the same rule applies to other statutes, where the compensation depends on unliquidated damages. Pinkney v. Inhabitants of East Hundred, 2 Saund. 374. On the other hand, on the statute of 2 Edw. VI. c. 13, which gives a forfeiture of the treble value for not duly setting forth tithes, debt has been held to lie. 2 Inst. 648–650; 1 Rolle, Abr. 598, 1. 25; Com. Dig. "Debt," A 1. Lord Holt is reported to have said, that the case of debt upon this statute was at first a strain, because it gave an action of debt, whereas the statute gave treble damages; but the party should rather have had an action on the statute. College of Physicians v. Salmon, 1 Ld. Raym. 680. His lordship, however, was clearly mistaken; for the words of the statute give the treble value, and not treble damages; and debt lies in every case of a penalty, where the sum is certain, or can be readily reduced to a certainty, as the treble value may. But the very distinction alluded to by his lordship clearly shows,

that though debt is in general the remedy for penalties and forfeitures on statutes; yet that it is not universally so. For the remedy follows the nature of the case, and debt lies only when, by analogy to the rules of the common law, the duty or penalty lies not in unliquidated damages, but is capable of being reduced to a certainty. So, if the forfeiture be of a chattel, detinue, and not debt, is the proper remedy. And cases may arise under a statute, in which the parties may have divers remedies. For instance, by the statutes of New Hampshire and Massachusetts, towns are obliged to support paupers having settlements therein; and are compellable, in certain cases, to pay the expenses incurred by other towns on account of such paupers. Actions of assumpsit upon these statutes are very frequent; and (assuming that corporations have a capacity to make a promise) there cannot be a doubt, that the action well lies; for the statutes create a direct and immediate liability quasi ex contractu. But there can be as little doubt, that an action of debt will lie in the same case, as the claim is for a determinate sum of money, arising from a legal and direct duty, if the statute do not point to any other form of action. The result of this examination instructs us, that the action to be pursued to enforce a statutable right, obligation, or remedy for a grievance, is not necessarily debt, but depends upon the subject matter and nature of the provisions of the statute; and that it is not sufficient, in the present case, for the defendant to establish affirmatively, that an action of assumpsit or case might well lie; but negatively, that an action of debt will not.

The principal ground, upon which it is argued, that debt will not lie in this case, is, that this is a collateral liability, created by statute; and that, by analogy to the rule of law, that debt will not lie on any collateral undertaking by contract, it will not lie in this case, which is quasi ex contractu. By the ancient common law, all matters of personal contract were considered as binding only in the light of debts; and the only means of recovery in a court was by an action of debt. 1 Reeve, Eng. Law, 159; Glan. lib. 10, cc. 1, 2, 3, etc. And the legal notion of a debt was, a duty, created by the common law upon some good consideration, moving immediately between and for the benefit of both parties; such as upon a borrowing, a sale, a lending, a hiring, or a deposit. Id. lib. 10, c. 3. In short, contracts of debt were (as Lord C. J. Vaughan declares) deemed reciprocal grants. Edgcomb v. Dee, Vaughan, 89, 101. A promise, therefore, to pay money, founded merely on a consideration affecting third persons, or to the prejudice or injury of the promisee, without any benefit to the promisor, was deemed a mere nude pact, and not sufficient to raise a valid contract of debt. And, therefore, if a person, for a good considera-

tion, promised to pay the debt of another, either generally, or at a future day, it was held a mere collateral engagement, for which an action of debt did not lie; though it would have been otherwise, if the promise had been by deed. One of the earliest cases on this subject is in 44 Edw. III. 21. See this same point made, 18 Edw. III. 13, and 1 Rolle, Abr. 593, C 30. There, in the writ of debt, the plaintiff declared, that a man had borrowed of him one hundred shillings to be paid at a certain day, at which day he did not pay it; upon which the defendant came, and requested the plaintiff to take him as his debtor, and to delay asking payment until St. Michaels next following, and he would then pay, and so became principal debtor. And because the plaintiff could not show any specialty, proving this thing, it was adjudged, that he should take nothing; for Moubrey, J., said, according to his understanding, the person was not discharged; and so the defendant could not be debtor, if the other remained chargeable. There was another case in 9 Hen. V. 14, which was debt upon a promise by A to pay a judgment recovered by the plaintiff against B, if the plaintiff would release B from the execution. The plaintiff did release B, and afterwards brought this action; and an exception being taken, Cockrain, J., said that the matter, in his opinion, was not sufficient to maintain the action; and the report then proceeds, "quere, ex nudo pacto non oritur actio, etc. issint est l'opinion, etc.;" from which it is inferred, that in the opinion of the court the action did not lie. Com. Dig. "Debt," B. However, the doctrine does not seem to have been completely settled; for in several subsequent cases, the point was incidentally discussed and disputed (37 Hen. VI. 8; 14 Edw. IV. 7, 6; 15 Edw. IV. 32; 17 Edw. IV. 4, 5); and in 27 Hen. VIII. 24, the court was divided in opinion upon it. That case was assumpsit, brought on a promise made by the defendant to pay a debt of A for which he was in prison on execution, if the plaintiff would release A from the execution; and the plaintiff averred, that he did release him. It was among other things argued, that case did not lie; for that debt was the proper remedy. But the whole court said, it was not so; for in many cases a man may have an action on the case, where he has another remedy; and Spelman and Port, Justices, held, that debt would lie as well as case; but Brooke, J., and Fitz James, C. J., were of a different opinion, and said, that debt would lie only, where there is a contract; for the defendant had not a quid pro quo; but the action is founded solely on the assumption, which sounds merely in covenant; and as there was no specialty, the plaintiff had no other remedy, but an action upon the case. Since that time, there is a string of cases on each side of the question; some of the authorities asserting, that debt will lie upon a col-

lateral contract for the payment of money; and others expressly denying it. The weight of authorities certainly is against the action. Johnson v. Morgan, Cro. Eliz. 758; Bloome v. Wilson, Jones, 184; Sands v. Trevilian, Cro. Car. 193; Dyer, 272, in margin; Com. Dig. "Debt," A 8; 1 Rolle, Abr. 593, E 45, E 51; Id. 594, line 10; Doct. & Stud. dial. 2, c. 24; Core's Case, 28 H. 8; Dyer, 19, 21, per Luke, J.; Anon., 1 Vent. 293; Kent v. Derby, Id. 311; Rozer v. Rozer, 2 Vent. 36; Anon., 1 Vent. 268; Stonehouse v. Bodvil, T. Raym. 67; Masters v. Marriot, 3 Lev. 363; Anon. Hardr. 485; Gilb. "Debt," 364; Bishop v. Young, 2 Bos. & P. 78. The earlier cases manifestly proceeded upon the notion, that there was a want of sufficient consideration, or, as it is quaintly expressed, that there was no quid pro quo, on which to found a contract. And when this doctrine was exploded, as it could not fail to be, by the good sense of succeeding times (Doct. & Stud. dial. 2, c. 24), it was held, that the effect of the promise was not to create a debt or duty to pay the specific sum agreed to be paid, but only such damages as the plaintiff had sustained by the breach of the contract; and that, therefore, an action upon the case, and not debt, was the proper remedy. Hardr. 486; Vaughan, 101. Lord Loughborough instructs us, that the manner in which the action of assumpsit was brought, prior to Slade's Case, was by stating, not a general indebitatus assumpsit, for it was not brought merely on a promise, but a special damage for a non-feasance, by which a special action on the case arose to the plaintiff; and that Slade's Case, 4 Coke, 42, was the first, where general damages for the non-performance of a contract, were laid as the cause of action. Rudder v. Price, 1 H. Bl. 547.

That the real reason, why debt was held not to lie upon a contract to pay the debt of another, was the uncertainty of the sum to be recovered for the breach thereof, sounding merely in damages, and not any peculiar notion derived from its being a collateral undertaking, cannot be doubted. If such collateral undertaking to pay a sum certain be evidenced by a sealed instrument, there can be no doubt, that an action of debt well lies. And why? Clearly because it is a contract, upon which, by law, the party is entitled to recover a sum certain. Lord Chief Baron Comyn lays it down as a general proposition, that "debt lies upon every express contract to pay a sum certain." Com. Dig. "Debt," A 8. Mr. Justice Blackstone asserts the same doctrine in still more precise terms. "Any contract, (says he,) whereby a determinate sum of money becomes due to any person, and is not paid, but remains in action merely, is a contract of debt." 2 Bl. Comm. 464. The true test is, therefore, whether the sum to be recovered has, upon the contract itself, a legal certainty. Following, therefore, the principle of the old

decisions, we may well hold, that debt does not lie upon any collateral undertaking, where the sum to be recovered is uncertain, and sounds merely in damages. But whenever the law, upon any undertaking, gives the party a title to a determinate sum, which becomes his absolute due by the rules applied to the contract, it should seem, that an action of debt must, upon admitted principles, be held to lie. Indeed, an action of debt against a pledge or collateral security, eo nomine, is as old as the common law itself; and Glanville gives the form of the writ against them. Glan. lib. 10, cc. 3, 4. It was, to be sure, necessary, that the engagement should be under seal, or be binding by custom for a sum certain (though Fitzherbert seemed to think otherwise). Fitzh. Nat. Brev. 122, K 137. But see 43 Edw. III. 11. Yet this was because, by the law of the land, the engagement was otherwise not binding, but was void as a nude pact. It does not seem to me an over-straining of the old doctrine, to apply it to any cases of collateral undertakings, in respect to which the law now pronounces, that the parties to the contract are bound to pay, not unliquidated damages, but a sum certain. For instance, the engagement of an endorser of a bill or note is merely collateral; yet, upon the default of the maker or acceptor, he is clearly liable by law to pay to the holder a determinate sum, the various sums stated in the bill or note. It is a duty, created by the custom of merchants, which is a part of the law of the land. See Eyre, J. C., in Gibson v. Minet, 1 H. Bl. 602. It would be a violation of the first principles of law, for the court to direct, or the jury to give, a less sum to the holder. How then it can be correctly held, that debt does not lie by the holder against the endorser in such a case, I profess myself unable to comprehend. I must say with Lord Loughborough (Rudder v. Price, Id. 555) that "I cannot devise a substantial reason, why a promise to pay money not performed, does not become a debt; and why it should not be recoverable, eo nomine, as a debt." If, however, "the authorities are too strong to be resisted," it will become our duty to bow to them, however unsatisfactory they may be. But when we find, that this doctrine rests mainly on a case in Hardr. (Anon., Hardr. 485), which was decided at a time, when the law relative to negotiable instruments was very little understood, and which has been recently overturned by an unanimous decision of the supreme court (Raborg v. Peyton, 2 Wheat. [15 U. S.] 385), and when it has been decided, that an action of debt lies by the payee of a bill of exchange against the drawer (Hard's Case, 1 Salk. 23; Hodges v. Steward, Skin. 346), whose engagement is certainly collateral. I own, that I am not without hope, that the law will, on this subject, be followed out upon its genuine and rational principles. If, there-

fore, the present case were to be considered exactly like the case of an endorser of a note, I am not quite prepared to admit, that an action of debt could not be sustained.

But we may well leave that point to be decided, when it shall arise; for this is not the case of a collateral contract, created by an endorsement. It may have some analogy to it, and so it has to an absolute guaranty or suretyship. This is a liability created, not merely by the act of the parties, but by the express terms of a statute. The act of incorporation (Act June 18th, 1806) provides, "that if said corporation shall, at any time hereafter, divide their stock, previous to the payment of all their bills, or shall refuse or neglect to pay any of their bills, when presented for payment in the usual manner, the original stockholders, their successors, and assigns, and the members of such corporation, shall, in their private capacities, be jointly and severally liable to the holder of any bill or bills, issued by the said corporation for the payment thereof," &c. &c. I agree at once to the position, that the bills of the bank are to be considered originally as the debts of the corporation, and not of the corporators; and, except from some special provision by statute, the latter cannot be made answerable for the acts or debts of the former. They are altogether in law distinct persons, and capable of contracting with each other. But the corporators are not strangers to the corporation. On the contrary, the law contemplates a privity between them; and upon that privity has created an obligation on the corporators, under certain circumstances, to pay the debts of the corporation. Nothing can be better settled, than that an action of debt lies for a duty, created by the common law, or by custom. Anon., Hardr. 495. A fortiori it must lie, where the duty is created by statute. Mr. Justice Blackstone says, "that every person is bound, and hath virtually agreed to pay such particular sums of money, as are charged on him by the sentence, or assessed by the interpretation of the law. Whatever, therefore, the law orders any one to pay, that becomes instantly a debt, which he hath beforehand contracted to discharge." Without placing any reliance upon this refined notion of contracts, it cannot be doubted, that the learned judge has expressed the true doctrine of the law. Whatever is enjoined by a statute to be done, creates a duty on the party, which he is bound to perform. The whole theory and practice of political and civil obligations rest upon this principle. When, therefore, a statute declares, that, under certain circumstances, a stockholder in a bank shall pay the debt due from the bank, and those circumstances occur, it creates a direct and immediate obligation to pay it. The consideration may be collateral or not; but it is not a subject matter of inquiry. And to deny, that it is a duty on the stockholder to pay the money, is to deny the authority of the statute itself; for a duty is nothing more than a civil obligation to perform that, which the law enjoins. Here, then, the law has declared, that the stockholders shall be liable to pay a specific sum, and it imposes on them a duty so to do. How then can the court say, that debt does not lie, since there is a duty on the defendant to pay the plaintiff a determinate sum of money? There is no room, under this view of the case, for entertaining any question as to collateral undertakings. The law has created a direct liability, a liability as direct and cogent, as though the party had bound himself under seal to pay the amount; in which case debt would undoubtedly lie. The law esteems this an obligation created by the highest kind of specialty. Indeed, if debt would not lie in this case, it is inconceivable, how assumpsit could. There is no pretence of any express promise; and if a promise is to be implied, it must be because there exists a legal liability, independent of any promise sufficient to sustain one. Now, the very action of a collateral undertaking is, that there exists no legal liability, independent of the promise to create a duty. And if there exists a duty sufficient to raise a promise, then it is sufficient to sustain an action of debt. Upon the most mature reflection, I am of opinion, that an action of debt well lies in this case.

There is another point, stated by the ingenious counsel for the defendant, which deserves particular notice. It is, that upon the true construction of this statute, the right of action accrues only upon a division of the stock, and a subsequent refusal of the bank to pay its bills. And in support of this position, various cases have been cited in which "or" has been construed "and." Those cases are good law; but they do not apply to the present case. The construction of this statute, if not perfectly free from every subtile doubt, is reasonably certain. It gives a remedy against the stockholders in every case, where the bank neglects or refuses to pay its bills, upon presentment for payment in the usual manner, as well before as after a division of the stock. The intent of the legislature must be very clear, and the mischiefs very great, that would authorize a court, in a case like the present, to substitute "and" for "or." What is there unreasonable in the legislature's protecting the holder of a bank note against the insolvency of a bank, arising from other causes, as well as from a division of its stock. The public mischief is no greater in the one instance, than in the other; and the event of an insolvency from other causes is quite as much within the compass of probability, as from a division of the stock.

The district judge concurs in this opinion; and therefore judgment upon the demurrer must pass for the plaintiff.

[NOTE. When the action for debt lies: On simple contract. Childress v. Emory, 8 Wheat. (21 U. S.) 642, 672. Express or implied.

Collins v. Johnson, Case No. 3,015a. For distinct sums of money payable by the terms of a contract at different times. Faw v. Marsteller, 2 Cranch (6 U. S.) 10; Nailor v. Kearney, Case No. 10,004. But see Fontaine v. Aresta, Id. 4,905. By the payee or indorsee of a bill of exchange. Raborg v. Peyton, 2 Wheat. (15 U. S.) 385; Kirkman v. Hamilton, 6 Pet. (31 U. S.) 20; Home v. Semple, Case No. 6,658; Gardner v. Lindo, Id. 5,231; Vowell v. Alexander, Id. 17,017; Frazer v. Carpenter, Id. 5,-069. But see Lindo v. Gardner, 1 Cranch (5 U. S.) 343. On a decree for the payment of money. Pennington v. Gibson, 16 How. (57 U. S.) 65; Bank of Circleville v. Iglehart, Case No. 860; Nations v. Johnson, 24 How. (65 U. S.) 292. For a sum capable of ascertainment. U. S. v. Colt, Case No. 14,839; Stockwell v. U. S., 13 Wall. (80 U. S.) 531, affirming Case No. 13,466. And see Chaffee v. U. S., 18 Wall. (85 U. S.) 516; U. S. v. Willetts, Case No. 16,699; U. S. v. Lyman, Id. 15,647; U. S. v. Bougher, Id. 14,627; U. S. v. Morin, Id. 15,810; Union Iron Co. v. Pierce, Id. 14,367. For customs duties. U. S. v. Lyman, Id. 15,647; Stockwell v. U. S., Id. 13,-466. For tonnage and light duties. U. S. v. Hathaway, Id. 15,326. For a revenue tax. U. S. v. Halloran, Id. 15,286; Dollar Sav. Bank v. U. S., 19 Wall. (86 U. S.) 237. On a bail bond. Davis v. Packard, 7 Pet. (32 U. S.) 285. Against bank directors for personal liability created by statute. Falconer v. Campbell, Case No. 4,620. For damages and costs distinctly awarded. Matthews v. Matthews, Id. 9,288. On an open account. Dillingham v. Skein, Id. 3,912a. On an appeal bond. Dowlin v. Standifer, Id. 4,041a. For penalties stipulated by contract. Martin v. Taylor, Id. 9,166. Statutory penalties. Jacob v. U. S., Id. 7,157; In re Rosey, Id. 12,066; Stockwell v. U. S., supra; Chaffee v. U. S., supra; U. S. v. Willetts, supra; U. S. v. Foster, Case No. 15,142; The Nashville. Id. 10,023; Jacob v. U. S., supra; U. S. v. The C. B. Church, Case No. 14,762; Oliver v. Weakley, Id. 10,502. See, also, U. S. v. Allen, Id. 14,431. But see U. S. v. Claflin, 97 U. S. 547. And notwithstanding the statute giving the penalty also authorizes imprisonment to be enforced by indictment. U. S. v. Foster, supra. The imprisonment cannot be waived, and debt brought for the fine. U. S. v. Morin, supra; U. S. v. Ebner, Case No. 15,020. Lies to recover a penalty the amount of which is not certain. U. S. v. Elliot, Id. 15,043. See, also, U. S. v. Colt, supra; U. S. v. Little Miami C., & X. R. Co., 1 Fed. 700. Will not lie for interest due on a loan. U. S. v. Colt, supra. Nor to enforce a contribution by stockholders. Bank of Circleville v. Iglehart, Case No. 860. But see Mills v. Scott, 99 U. S. 29.]

