EDMUND BAKER & others *vs.* THE PRESIDENT, DIRECTORS, &c. OF THE ATLAS BANK & others.

The provision in the Rev. Sts. *c.* 36, § 30, that " if any loss or deficiency of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such mismanagement shall, in their individual capacities, be liable to pay the same," does not enable the creditors of the bank to maintain a suit against the stockholders, to recover payment of their demands against the bank. And if the stockholders were liable to a suit of the creditors, under that section, it would be barred by the statute of limitations, (Rev. Sts. *c.* 120, § 1,) in six years from the time of the loss or deficiency of the capital stock.

THIS was a bill in equity, brought not only in behalf of the plaintiffs, but also in behalf of all other creditors of the Nahant Bank, and was filed on the 15th of April 1843.

The bill, after alleging the incorporation of said bank, by *St.* 1833, *c.* 144, the organization of the corporation, its transaction of business, and the repeal of its charter by *St.* 1837, *c.* 214, contained the following statements : That by a decree of this court, passed on the 15th of April 1838, in a suit wherein the Atlas Bank was complainant and the said Nahant Bank was respondent, three persons (who were made parties to the bill, as defendants,) were appointed receivers and trustees of the estate and effects of the said Nahant Bank, pursuant to law ; (Rev. Sts. *c.* 44, §§ 8 – 10 ;) and that their powers were still continued : That by an order of this court, passed in the suit aforesaid, it was referred to said receivers to report to this court what persons and corporations were creditors of said bank, and the amount of their respective claims : That said receivers, pursuant to said order, made their report, which was confirmed by a decree of this court, passed in July 1843 :

That by said report the plaintiffs were declared, and by said decree were adjudged to be, and still are, creditors of said bank, respectively, for the amounts following : [Here the sum due to each of the plaintiffs was stated, and reference was made to the proceedings of the court, by which, as it was alleged, it appeared that numerous other persons were creditors of said bank.] That the assets of said bank were insufficient to pay the said creditors ; and that, on or before the 16th of November 1836, the whole of the capital stock of said bank was lost by reason of the official mismanagement of its directors.

The bill then set forth the names of bodies corporate, and of individuals, (including the Atlas Bank and other defendants,) that were stockholders of said Nahant Bank at the time or times of the official mismanagement aforesaid, and also the names of divers persons, resident out of the Commonwealth, who were holders of stock in said bank when its charter expired by the repeal thereof as aforesaid.

The bill then alleged, that the plaintiffs had requested the aforesaid receivers, as representatives of all the creditors of said bank, to cause the said stockholders to make good the loss of the capital stock of said bank, caused by the mismanagement of its directors, and to institute a suit to compel restitution of said capital in case of a refusal by said stockholders so to do ; but that said receivers refused to comply with said request, and said stockholders refused to make good said capital, or to pay in any part thereof.

The plaintiffs, after setting forth the particulars of the mismanagement of the directors of the Nahant Bank, whereby the capital thereof was lost, prayed that the defendants might answer the matters charged in the bill ; that an account might be taken of all losses of said capital stock, through such mismanagement, and also an account of all the debts due from said bank and remaining unpaid, and of the assets of said bank in the hands of said receivers.; that all the creditors of said bank, in whose behalf the bill was filed, might have leave to come in and prove their claims, and become parties

to this suit; and that the defendants might be decreed to pay in so much of the said losses, not exceeding the whole of said capital stock, as should be sufficient to pay in full, with interest, the claims of the creditors of said bank, who are, or may become, parties to this suit; and that the fund, so raised, might be distributed among such creditors, in proportion to their respective claims. There was also a prayer for such further and other relief as should seem to the court to be meet.

The defendants, insisting upon every objection to the bill, which might be insisted upon by way of demurrer or plea, made answer, in substance as follows: 1. That the bill is founded on the Rev. Sts. *c.* 36, § 30, which provide that " if any loss or deficiency of the capital stock of any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such mismanagement shall, in their individual capacities, be liable to pay the same ; provided, that no stockholder shall be liable to pay a sum exceeding the amount of the stock actually held by such stockholder at that time ; " but that the bill cannot be maintained on said provision. 2. That if the bill could be maintained, on said provision, at any time, yet, as it was not filed until the 15th of April 1843, and as it alleges that the whole of the capital stock of the Nahant Bank was lost, by reason of the mismanagement of its directors, on or before the 16th of November 1836, the plaintiffs' cause of action, if any, against the defendants, was barred, before the bill was filed, by the statute of limitations — Rev. Sts. *c.* 120, § 1.

By agreement of the parties, the case was argued on the preliminary questions raised by the answer.

*Gardiner*, for the defendants. 1. The 30th section of *c.* 36 of the Rev. Sts. was not intended to compel stockholders to pay the creditors of an insolvent bank, after its charter expires or is repealed, but to compel them to restore to the bank, while in operation, the capital which may be lost through the mismanagement of its directors ; so as to prevent the insolvency of the bank, and keep it in safe operation. The section

was taken from *St.* 1828, *c.* 96, § 12, where it was introduced from the act incorporating the State Bank — *St.* 1811, *c.* 84, § 3, art. 13. When this provision was first made, (in 1811,) the proceedings under it must have been at law, for the court then had no chancery power on the subject. The proper proceeding would have been by mandamus to the corporation to call on the stockholders to make up the lost capital. Angell & Ames on Corp. (2d ed.) 571. And this mandamus must have been obtained before the expiration of the charter of the bank ; for it was not until the passing of *St.* 1819, *c.* 43, that banks were continued bodies corporate, for the term of three years after the day on which their powers would expire, for the purpose of prosecuting and defending suits, &c.

The 30th section, on which this bill is founded, gives to creditors of the bank no right of action, in express terms, against the stockholders. The stockholders are not charged with the debts of the corporation, but with the loss of its capital stock. They " shall pay the same," i. e. the loss. Pay to whom ? To the corporation, which has sustained the loss. And this they are to do, as well when the whole capital is lost, as when there is " *any* loss or deficiency." The 31st section expressly charges stockholders with payment of the bills of the bank after its charter has expired, if not otherwise paid. If such had been the meaning of § 30, it would have been so expressed. If the creditors' remedy, under that section, was to continue after the expiration of the charter and the dissolution of the bank, why was it not confined to creditors other than bill holders, as § 31 is confined to bill holders only ?

In *Harris* v. *First Parish in Dorchester*, 23 Pick. 112, the only point decided was, that an action at law does not lie in a case like the present. The *dictum* of *Morton,* J. that the creditors of the bank had a remedy by bill in equity, was extrajudicial.

2. But if a bill like this could ever have been maintained, it is barred by the statute of limitations. By Rev. Sts. *c.* 120 § 1, " all actions of debt founded upon any contract, or liabil-

16 *

ity not under seal, excepting such as are brought upon the judgment or decree of some court of record of the United States, or of this, or some other State, and all actions of assumpsit, or upon the case, founded on any contract or liability, express or implied, shall be commenced within six years next after the cause of action shall accrue, and not afterwards." This statute applies to suits in equity, no less than to actions at law. *Farnam* v. *Brooks*, 9 Pick. 243. *Hovenden* v. *Lord Annesley*, 2 Scho. & Lef. 629. *Medlicott* v. *O'Donel*, 1 Ball & Beat. 166. The cause of action against the stockholders accrued as early, at least, as November 16th 1836. See 2 Story on Eq. (3d ed.) § 1521 *a*. *Stafford* v. *Richardson*, 15 Wend. 302. *Little* v. *Blunt*, 9 Pick. 488. *Brandram* v. *Wharton*, 1 Barn. & Ald. 463.

*B. R. Curtis*, for the plaintiffs. The main question is, whether creditors of a bank can make any direct claim on the stockholders to restore lost capital. It was *decided* in *Harris* v. *First Parish in Dorchester*, 23 Pick. 112, that such claim cannot be enforced, in an action at law, by a single creditor, and it was *said* that it might be enforced by a bill in equity, brought for all the creditors. The capital stock of a bank is a trust fund for the payment of the debts of the bank. Per Story, J. 3 Mason, 311. So it is regarded in Rev. Sts. *c.* 44, §§ 8 – 10. And this consideration is as applicable to § 30 as to § 31 of Rev. Sts. *c.* 36. Under the circumstances of this case, the receivers should have seen that the lost fund was replaced. The liability of the stockholders for the lost capital is a debt to the bank, which the receivers should collect for the benefit of the creditors. Rev. Sts. *c.* 36, §§ 8 – 10. *Gray* v. *Bennett*, 3 Met. 522. Section 22 of the same chapter authorizes the receivers, as representatives of the creditors, to bring a bill in equity against the stockholders, without joining the creditors as plaintiffs. See *Holland* v. *Cruft*, 20 Pick. 321. When trustees, who have a right to sue, refuse to sue, the *cestuis que trust* may sue, joining the trustees.

Though there was no remedy in equity, in a case like this when the act incorporating the State Bank was passed, yet it

does not follow that no such remedy exists now. Giving a remedy sometimes gives a right; as giving equity powers where there was previously no legal right. The rights of creditors, as to the funds of a bank, were the same in 1811 as in 1836, when the Rev. Sts. came into operation. The remedies are different. Granting that a mandamus was the only remedy in 1811, yet the creditors' rights were the same as they now are in equity; viz. to have the fund applied to pay their demands. In the present state of the laws, a mandamus would not be granted; there now being other remedies. See *Harrington* v. *County Commissioners*, 22 Pick. 268. *King William Justices* v. *Munday*, 2 Leigh, 165. Angell & Ames on Corp. (2d ed.) 576, 577. Bac. Ab. Mandamus, C. 2. A mandamus to a corporation to sue stockholders would be nugatory, if the corporation should not wish to recover; and a mandamus, that the corporation should recover, would be preposterous.

2. If an action at law, brought by the corporation against the stockholders, to recover the lost capital, would not be barred by the statute of limitations, then this bill is not barred. Under *St.* 1786, *c.* 52, § 1, which is a transcript of *St.* 21 Jac. 1, *c.* 16, § 3, such an action would not be barred. *Jones* v. *Pope*, 1 Saund. 37. *Hodsden* v. *Harridge*, 2 Saund. 64. *Pease* v. *Howard*, 14 Johns. 479. *Bullard* v. *Bell*, 1 Mason, 243. And the Rev. Sts. *c.* 120, § 1, though somewhat different in phraseology from *St.* 1786, were "not intended to make any change," as the commissioners expressly declare in a note.

The proof, made before the receivers, of the plaintiffs' claims on the bank, is binding on the stockholders. *Slee* v. *Bloom*, 20 Johns. 669. Those claims have been turned into *specialties*, which are not within *St.* 1786, *c.* 52, nor the Rev. Sts. *c.* 120, if there has been "no change" in the law. The plaintiffs sue as creditors of the bank; and as a bank cannot set up the statute as a bar to an action brought upon any evidences of debt issued by it, (Rev. Sts. *c.* 120, § 4,) the stockholders cannot set it up so as to bar the plaintiffs.

The statute began to run when the plaintiffs' right to the

relief prayed for accrued. But the *plaintiffs* had no right to such relief until the receivers refused to take measures to replace the lost capital. The creditors rightfully waited a reasonable time for the receivers to do their duty, without demanding of them that they should proceed. Their right to bring a bill in equity does not accrue when a loss of capital happens, but when they learn that the capital is insufficient to pay them. See *Wood* v. *Dummer*, 3 Mason, 319, 320. The nominal assets of a bank are always sufficient to pay its creditors ; and until it is ascertained whether they are available, or not, it cannot be known whether there will, or will not, be an ultimate loss to the creditors.

*Greenleaf*, in reply. There is no remedy in this case, by any proceeding in the names of the creditors of the bank. The capital fund actually paid in is a trust fund ; the bank is trustee, and the Commonwealth, primarily, is *cestui que trust*. In a modified way, and to a limited extent, creditors of the bank are *cestuis que trust* ; i. e. when the fund is deficient Generally, they have no right to an account. The case is analogous to a public charity, where the attorney general proceeds by bill, for the sovereign power. The duty of preserving the fund is on the corporation, and the right of restoring it belongs to the corporation alone. The stockholders are not trustees ; they have received nothing, have done nothing wrong, and have omitted nothing which they ought to have done. The plaintiffs, however, assert that the stockholders' liability is a debt, which the receivers might collect. But in the Rev. Sts. *c.* 44, § 8, the " debts," which receivers may collect, mean debts by contract, in the popular sense. In *Gray* v. *Bennett*, 3 Met. 522, the defendant had received money. And that a liability is not a debt, was decided in *Kelton* v. *Phillips*, 3 Met. 61. The case of *Holland* v. *Cruft*, 20 Pick. 321, furnishes no precedent for the plaintiffs ; for the action was brought by the trustee. The remedy is confined to the corporation, or its receivers. See *Law* v. *Rigby*, 4 Bro. C. C. 60. *Houlditch* v. *Marquis of Donegall*, 1 Sim. & Stu. 494. Story Eq. Pl. § 740

Perhaps the former statute of limitations (*St.* 1786, *c.* 52,) might not have barred this bill, if it could ever have been maintained.    The decisions on like statutes, which have been cited for the plaintiffs, from Saunders and 1 Mason, need not be impugned ; for the Rev. Sts. have changed the law on this point.    The intention of the commissioners is of no importance.   The intention of the legislature, as ascertained from intelligible terms used in the statute, and taken in their or- dinary sense, is to decide this point.    *U. States* v. *Fisher,* 2 Cranch, 390.

Statutes of limitations run from the time of the wrongful act done, or from the time of damage sustained from a law- ful act.    *Roberts* v. *Read,* 16 East, 215.    *Wordsworth* v. *Harley,* 1 Barn. & Adolph. 391.    *Gillon* v. *Boddington,* 1 Car. & P. 541, and Ry. & Mood. 161.    *Sutton* v. *Clarke,* 6 Taunt. 29.    *Lloyd* v. *Wigney,* 6 Bing. 489.    *Smith* v. *Shaw,* 10 Barn. & Cres. 277.    *Heard* v. *Middlesex Canal,* 5 Met. 81.

WILDE, J.*    This is a case of great importance to the par- ties and to the public, as the principles upon which it is to be decided, relating to the duties and liabilities of our banking corporations and corporators, must be interesting to a great portion of the community.    The parties also are very numer- ous, and whatever may be the decision of the case, many persons, without any fault on their part, must be subjected to losses.    We have, therefore, considered the case with great deliberation, and I will now, as briefly as may be, state the opinion of the court, and the principles upon which it is founded.

The first question discussed by counsel depends upon the construction of the 30th section of the 36th chapter of the revised statutes, on which the bill is founded.    That section provides, that "if any loss or deficiency of the capital stock in any bank shall arise from the official mismanagement of the directors, the stockholders at the time of such misman agement shall, in their individual capacities, be liable to pay

---

* *Hubbard,* J. did not sit in this case.

the same ; provided, that no stockholder shall be liable to pay a sum exceeding the amount of the stock actually held by such stockholder at that time." The plaintiffs' counsel contend that the construction of this section was settled by the decision in the case of *Harris* v. *First Parish in Dorchester,* 23 Pick. 112. But we do not so consider that decision. All that was decided in that case was, that the holder of a post note of an insolvent bank could not, by virtue of the said 30th section, maintain an action at law against a stockholder ; and that his remedy, if he had any, was by a bill in equity in behalf of all the creditors of the bank.

All the present members of the court, who decided that case, feel entire confidence that nothing more was intended to be decided, than that that action could not be maintained ; and that we did not intend to give any construction to the section in question, except so far as it related to an action at law. Otherwise, we should not have failed, I think, to have considered, and to have attempted to obviate, the objections to the construction contended for by the plaintiffs' counsel, which now appear to us to have great weight, and which could not have been overlooked, if the question had been deliberately considered. The learned judge, who drew up the opinion in that case, might have had, and probably had, a different impression, when he reduced the opinion to writing ; but we certainly did not intend to decide upon the equitable rights of a party, in a case in which his legal rights alone were involved. And if we had expressed an opinion upon a question not involved in the issue between the parties, it would have been an extrajudicial opinion, and must be considered as fully open for reconsideration and revision. We consider, therefore, the question of the construction of § 30 of *c.* 36, as an open question, now to be considered and deter mined. The question is, whether by this section the creditors of a bank can maintain a suit in equity against the stockholders, to recover payment of their demands against the bank.

The plaintiffs' counsel contend, that the capital stock of a bank is a fund held in trust by the corporation, for the benefit

and security of its creditors; and that when the fund is lost, or so reduced by the mismanagement of the directors, as not to be sufficient to pay its debts, and the stockholders shall refuse to make good the loss or deficiency, and the corporation shall refuse to cause a suit to be instituted against them, to compel such restitution of the capital stock, then the creditors of the bank may maintain a suit in equity against the stockholders, to enforce the payment of their demands to the full amount of the capital stock. On the other hand, the defendants' counsel insist, that the creditors can maintain no suit at law or in equity against the stockholders on the 30th section; that that section was intended to enable the corporation to keep good their capital stock, and to enable them to compel the stockholders to contribute proportionally, to make good any deficiency arising from the mismanagement of the directors, if any of the stockholders should refuse to pay their due proportion of the same; that payment was to be made to the corporation, and not to the creditors; that the object of the section was to prevent the insolvency of the bank, and not to provide a remedy in case of insolvency; and that in such a case there was no remedy for creditors, except by the 31st section, which, however, is expressly limited to bill holders.

The language of § 30 is certainly not very clear and explicit; but considering it in connexion with § 31, and other sections of the 36th chapter, its meaning, we think, may be ascertained with reasonable certainty. The 30th section, in terms certainly, does not create any liability in favor of creditors. The stockholders are made liable to pay any loss or deficiency of the capital stock; and the payment, unquestionably, was intended to be made to the bank; and the present bill is framed upon the admission that such is the true construction of this section. The creditors can have no claim on the stockholders, until after the total loss of the capital stock, and the insolvency of the bank. While the assets of the bank are sufficient to pay its debts, or if not sufficient, and the insufficiency is unknown, and the bank continues to

pay its debts and bills when demanded, the creditors have no claim on the stockholders. The question then is, whether they have any remedy by virtue of the 30th section, to enforce the payment of their claims against the stockholders, after the known failure or insolvency of the bank. If they had any such remedy, they would be held to prove that they were creditors at the time of the total loss of the capital stock ; which it would be impracticable, probably, for the bill holders to prove. But however this may be, the bill holders, after the charter of the bank was annulled, had no remedy under § 30 ; a more full and beneficial remedy being provided by § 31, which creates a liability of the stockholders to pay all the outstanding bills, although they should exceed in amount the whole of the capital stock. To suppose that a double remedy was intended to coëxist, if not an absurdity, is a reproach upon the good sense and discernment of the legislature, and of the wise men who drew up those two sections.

The remaining question on this head of the defence is, whether this suit can be maintained by the plaintiffs and the creditors of the bank, other than the bill holders. The argument of the plaintiffs' counsel is, that the capital stock of the bank is a trust fund for the payment of the debts of the bank, and may be followed by the creditors into the hands of the stockholders. This is unquestionably a sound and well settled principle of equity. The case of *Wood* v. *Dummer*, 3 Mason, 308, was decided on that principle. But in that case it was proved that the stockholders had divided among themselves 75 per cent. of the capital stock, while a large amount of bills of the bank remained outstanding and unpaid. In that case the individual stockholders were not liable, in their private capacities, for the debts of the bank, and the principle of the decision was, that a trust fund may be always followed by the *cestui que trust*, into the hands of any persons having notice of the trust attached to it. But this principle affords us no aid in ascertaining the true meaning of the provision under consideration. The defendants have received no part

of the trust fund, which has been wholly lost by the fraudulent mismanagement of some of the directors; and we cannot think that the 30th section was ever intended to apply to such a case. The object of that section seems to us to be, as its language indicates, to keep the capital stock good, to enable the bank to continue to carry on a safe business; and not for the purpose of paying the debts of an insolvent bank, whose charter has been annulled. And we are strongly confirmed in this opinion by the 31st section. If it was the intention of the legislature that the stockholders should be liable to pay all the debts of the bank, why should it not have been so expressed? The restrictive limitation to bank bills cannot be imputed to mistake or carelessness. The distinction between the bill holders and other creditors who deal directly with the bank is obvious; and that the legislature intended to give a preference to the former cannot well be doubted.

This 31st section seems equivalent to an express declaration, that whenever the charter of a bank shall expire by its own limitation, or shall be annulled by the legislature, as provided for in c. 36, the stockholders shall be only liable, in their individual capacities, to pay the outstanding bills of the bank. This, and the other considerations suggested, have brought us to the conclusion, which seems to us satisfactory, that the 30th section was never intended to provide a remedy for the creditors of a bank, to enforce the payment of their claims against the stockholders; but merely for the purpose of preventing any deficiency in the capital stock, while the business of the bank should be going on, and its credit should remain unimpaired. The capital stock of a bank, in the first instance, was required as the fund for the payment of its debts, upon the security of which it was authorized to discount, and to circulate its notes; and for this purpose it was required to be kept good and entire. The 30th section imposes this duty on the corporation and the stockholders; not for the purpose of paying existing debts, but for that of enabling them to continue to carry on the business of the bank with safety to the public. If they should refuse or neglect

to comply with the requisition of the statute, the legislature, who had the guardianship of the public interest and safety, reserved to themselves, by the 40th section, the power to declare the charter forfeited. By that section the legislature had the right, from time to time, to appoint a committee to examine into the doings of any bank chartered under the authority of this Commonwealth ; and if, upon such an examination, it should appear, and, after a hearing of said bank thereon, it should be determined by the legislature, that said bank had exceeded its powers, or had failed to comply with any of the rules, restrictions and conditions provided by law, its charter might be declared forfeited. By *St.* 1838, *c.* 14, § 5, bank commissioners were appointed, with further powers, for the purpose of enabling the legislature more effectually to apply the powers, reserved by the said 40th section, to all cases ; whereby it was provided that if a majority of the commissioners should be of opinion, upon the examination of any bank, that the same was insolvent, or that its condition was such as to render its further progress hazardous to the public, they might apply to some one of the justices of this court to issue an injunction to restrain such corporation, in whole or in part, from further proceeding with its business, as might be needful ; which injunction said justice was authorized to grant, and, at his discretion, might appoint agents or receivers to take possession of the property and effects of the bank, subject to such rules and orders, as might from time to time be prescribed by this court, or any justice thereof, in vacation. This was an important provision, in al cases where the insolvency of a bank should first be discovered when the legislature was not in session, to prevent the misapplication of the assets until the legislature could exercise the power reserved by the Rev. Sts. *c.* 36, § 40. These are the provisions, and the only provisions, for a remedy in cases where a bank or its stockholders shall refuse or neglect to make good any deficiency of the capital stock caused by the mismanagement of the directors. By such neglect or refusal, a bank was liable to a forfeiture of its charter ; and the

stockholders thereupon were liable, by the 31st section, in their individual capacities, for the payment and redemption of all bills remaining unpaid, after winding up the concerns of the corporation. But, in such a case, it cannot be supposed that the capital stock was intended to be restored for the benefit of creditors. If the legislature had intended that the creditors, other than the bill holders, should have any claim on the stockholders for the payment of their demands, unquestionably it would have been so expressed in the 31st section.

Upon these considerations, without adverting to other objections to the plaintiffs' claim, which have been raised by the defendants' counsel, we are of opinion, that § 30 was never intended to apply to the stockholders of an insolvent bank; and that, in all such cases, after the charter of a bank has been declared forfeited, in pursuance of § 40, the stockholders are only liable, in their individual capacities, for the payment of the outstanding bills of the bank, under § 31. This construction of § 30, which we deem correct, is decisive against the plaintiffs' claim.

We have, nevertheless, considered another ground of defence, on which the defendants' counsel rely. They insist that if the plaintiffs ever had any valid claim upon the defendants, it has been barred by the statute of limitations. That this statute is obligatory upon courts of equity, as well as upon courts of law, is a principle established by numerous decisions, and cannot now be questioned. It was very fully considered by Lord Redesdale, in *Hovenden* v. *Lord Annesley*, 2 Scho. & Lef. 629. "But it is said," he remarked, "that courts of equity are not within the statutes of limitations. This is true in one respect; they are not within the words of the statutes, because the words apply to particular legal remedies; but they are within the spirit and meaning of the statutes, and have been always so considered. I think it is a mistake, in point of language, to say that courts of equity act merely by *analogy* to the statutes; they act in *obedience* to them. Equity, which in all cases follows the law, acts on legal titles and legal demands according to matters of con-

science which arise, and which do not admit of the ordinary legal remedies; nevertheless, in thus administering justice, according to the means afforded by a court of equity, it follows the law." The same general principle is laid down in 2 Story on Eq. § 1520, and is fully supported by the authorities. And we do not understand that the plaintiffs' counsel question the principle, that the statute of limitations is a bar in this suit, if it would be a bar in an action at law. But they contend that by the true construction of our statute of limitations, their demand is not barred, on the ground that an action founded on a liability created by statute is not within the statute; and they rely on the decision in the case of *Bullard* v. *Bell*, 1 Mason, 243, in which it was so decided in reference to the statute of limitations of the State of New Hampshire, which bars all actions of debt, grounded upon any lending or contract without specialty, unless commenced within six years next after the cause of action accrued. And it was decided that a statute was a specialty, within the meaning of the statute of limitations. But the language of our statute of limitations (Rev. Sts. *c.* 120,) varies materially from that of the statute of the State of New Hampshire. By the first section of our statute it is provided, that "all actions of debt, founded upon any contract or liability not under seal, except such as are brought upon the judgment or decree of some court of record of the United States, or of this, or some other of the United States; all actions of assumpsit, or upon the case, founded on any contract or liability, express or implied ; shall be commenced within six years next after the cause of action shall accrue, and not afterwards."

That this case, as stated in the bill and answer, is within the express words of the statute of limitations, cannot be controverted. The defendants are charged with a debt created by statute ; and this certainly is not founded upon a contract or liability under seal; nor upon any judgment or decree of a court of record. But it is argued for the plaintiffs, that the case, if within the letter, is not within the meaning of the statute. The argument is founded on a note of the revising

commissioners, appended to the 120th chapter, in which it is stated, that " the enumeration and description of actions in this [first] section are more full and particular than those in *St.* 1786, *c.* 52 ; but it is not intended to make any change in the existing law. The language is taken chiefly from the revised code of New York, and is designed to adopt the law, as it is now understood, and to render it clear and explicit."

It is difficult, perhaps, to give a satisfactory explanation of this note. For, whatever might have been the intention of the learned commissioners, they certainly have made a change in the existing law. The *St.* of 1786, *c.* 52, § 1, extended to " all actions of debt grounded upon any lending or contract, without specialty." It would seem, however, that the commissioner, who penned this note, had not in his recollection the change of language in this clause of the first section ; or, which is more probable, that he did not construe the former statute as a similar statute was construed in *Bullard* v. *Bell ;* and that the word " specialty," and the words " contract under seal," were considered as convertible terms, as they certainly are according to the ordinary meaning of the word " specialty." But however this may be, the question is not what were the intention and meaning of the commissioners, as to the provision in question, but what was the intention of the legislature ; and this must be determined by the language of the statute. And where the words are clear and explicit, they are to be understood in their natural signification and import, unless by such exposition a contradiction or inconsistency would arise in the statute, by reason of some other clause, from which a different intention of the legislature might be inferred. Parker, 233. Bac. Ab. Statute, I. 2. Here the words " contracts under seal " and " liability " are plain words, the meaning of which is too obvious and clear to be misunderstood ; and if the legislature intended to except from the operation of the statute liabilities created by statute, it must be presumed that it would have been so expressed.

It was then argued by the plaintiffs' counsel, that the statute did not begin to run until the plaintiffs' right to sue in

17 *

equity accrued, which was not before the receivers of the bank refused to commence an action for their benefit. But if this argument would hold good, the plaintiffs might delay their application to the directors of the bank, or the receivers, for any length of time, and the statute would be inoperative and nugatory. It has also been argued that the statute did not begin to run until it was first ascertained what would be paid by the assets of the bank. But we think that suits might be commenced against the bank and against the stockholders at the same time, and that the suits might go on *pari passu.* But there is another and a conclusive answer to both of these arguments. The demand sought to be enforced in this suit was a debt alleged to be due to the bank. Whenever, therefore, the bank became insolvent by the loss of its capital stock, an action accrued to the bank; according to the construction of the 30th section, which is contended for by the plaintiffs' counsel, to recover a sum from the stockholders, respectively, equal to each one's share of the stock. The statute, therefore, began to run, in strictness, immediately on the loss of the capital stock, and certainly when the bank stopped payment ; and after the lapse of six years from that time the debt was barred, and as effectually as though it had been actually paid. So also if, after the insolvency of the bank, the stockholders became directly liable to the creditors, the plaintiffs' right of action accrued immediately upon the loss of the whole capital stock, and the statute of limitations. is a bar to the plaintiffs' demand in any form of action.

The conclusion then is, that if, contrary to what we consider the true meaning of § 30, the plaintiffs ever had any equitable claims upon the defendants, they are barred by the statute of limitations ; so that on both grounds, on which the defendants rely, they are entitled to judgment for the dismissal of this bill, with costs.

*Bill dismissed.*